41 F.3d 1505
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francis Julius TAYLOR, Defendant-Appellant.
 No. 94-5356.
 United States Court of Appeals, Fourth Circuit.
 Submitted Oct. 18, 1994.
Decided Nov. 18, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Bryson City. Terrence W. Boyle, District Judge. (CR-92-89)
 William Harvey Leslie, Asheville, North Carolina, for Appellant. Mark T. Calloway, United States Attorney, Deborah A. Ausburn, Assistant United States Attorney, Asheville, North Carolina, for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before HALL and MICHAEL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 After shooting his wife in the back at their home on the Cherokee Indian Reservation in North Carolina, Francis Julius Taylor pled guilty to assault resulting in serious bodily injury, 18 U.S.C.A. Secs. 113(f), 1153 (West Supp.1994) (Count One), and to using and carrying a firearm in the commission of a crime of violence, 18 U.S.C.A. Sec. 924(c) (West Supp.1994) (Count Two). He was sentenced to a term of forty-six months on Count One, and a consecutive sixty-month term on Count Two. Taylor appeals this sentence on several grounds relating to the district court's denial of an adjustment for acceptance of responsibility. United States Sentencing Commission, Guidelines Manual, Sec. 3E1.1 (Nov.1993). We affirm.
 
 
 2
 For some time before the shooting, Taylor had been making unsubstantiated accusations that his wife was engaged in drug usage and prostitution, and he threatened to kill her if she tried to have him committed to a mental hospital.* As she attempted to leave the house for work at 6:30 a.m. on August 6, 1992, Taylor shot her in the back with a .22 caliber rifle. His son heard the shot, took the gun from his father, and drove his mother to a relative's house to call an ambulance. Taylor then went to a hospital where he tried to have himself voluntarily committed.
 
 
 3
 N Following his arrest, Taylor repeated the accusations against his wife to an agent from the Federal Bureau of Investigation, and said he had accidentally shot his wife while aiming at a neighbor and another acquaintance who were present and were involved with his wife's prostitution. The two men were actually working in Alabama that morning. Taylor also told the agent that an out-of-state van had come to his house the night before and that the driver made statements implicating his wife in prostitution; Taylor provided the license number of the van, which turned out to belong to a couple vacationing in the area. In his interview with the probation officer following his guilty plea, Taylor said that on the morning of the shooting his wife put cocaine up his nose while he was asleep, and hit him after he awoke. He said he remembered nothing thereafter until he was brought to court to be charged.
 
 
 4
 Taylor's plea agreement provided that the government would recommend a two-level adjustment for acceptance of responsibility, with the understanding that the final determination would be made by the district court. At the sentencing hearing, the government failed to make the promised recommendation. The district court considered the probation officer's recommendation against giving the reduction as well as the testimony of the FBI agent who had interviewed Taylor after the shooting, and found that Taylor had not accepted responsibility. Taylor maintains on appeal that the district court clearly erred in so finding. He also contends that the government's breach of the plea agreement entitles him to resentencing so that he may obtain specific performance or be allowed to withdraw his guilty plea. Finally, he argues that, if his guilty plea and written statement acknowledging his guilt was not enough to earn him the adjustment, the plea agreement was illusory and his sentence violates due process.
 
 
 5
 First, we find that the district court did not clearly err in denying Taylor an adjustment for acceptance of responsibility, despite his guilty plea. To earn the reduction, a defendant must truthfully admit the conduct comprising the offense of conviction. USSG Sec. 3E1.1, comment. (n.1(a)). The defendant has the burden of demonstrating that he is entitled to the adjustment. United States v. Urrego-Linares, 879 F.2d 1234, 1239 (4th Cir.), cert. denied, 493 U.S. 943 (1989). While a guilty plea is significant evidence that a defendant has accepted responsibility, it may be outweighed by conduct inconsistent with acceptance of responsibility. USSG Sec. 3E1.1, comment. (n.3). Taylor's statements to the agent and the probation officer exemplify such conduct.
 
 
 6
 The government clearly failed to live up to its promise to recommend a two-level adjustment for acceptance of responsibility. However, after a defendant is sentenced, he may withdraw his guilty plea only on a showing that failure to allow withdrawal would result in "manifest injustice." United States v. Davis, 954 F.2d 182, 185 (4th Cir.1992). Because the district court correctly denied the adjustment, Taylor cannot show manifest injustice, and therefore we will not remand for resentencing or for withdrawal of the guilty plea.
 
 
 7
 Last, the plea agreement gave ample notice to Taylor that the district court would ultimately determine whether he had demonstrated acceptance of responsibility. The agreement was neither vague nor misleading in this respect, and Taylor's sentence was not imposed in violation of due process.
 
 
 8
 The sentence imposed is therefore affirmed. The government's motion to decide the case on the briefs is granted. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 9
 AFFIRMED.
 
 
 
 *
 Family members previously had Taylor involuntarily committed but he was released after screening. A psychiatric evaluation conducted after his arrest showed that Taylor was competent at the time the offense was committed