UNITED STATES of America, Plaintiff–Appellee,

v.

Joel D. DAVIS, Defendant–Appellant (Two Cases).

Nos. 90–5859, 91–7592.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 1991.

Decided Jan. 9, 1992.

David Cohen, argued (Nathan Lewin, on brief), Miller, Cassidy, Larroca & Lewin, Washington, D.C., for defendant-appellant.

Barbara S. Sale, Asst. U.S. Atty. argued (Richard D. Bennett, U.S. Atty. and Peter M. Semel, Asst. U.S. Atty., on brief), Baltimore, Md., for plaintiff-appellee.

Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and CHAPMAN, Senior Circuit Judge.

## OPINION

ERVIN, Chief Judge:

Joel Davis was convicted in the District of Maryland of mail fraud and interstate travel in aid of racketeering. Subsequently, Davis pled guilty on a severed count of the same indictment, which charged conspiracy to murder an agent of the Internal Revenue Service. Following sentencing on all counts, Davis attempted to withdraw his guilty plea. The trial court denied his motion. Davis appeals this ruling, challenges the validity of a provision of the plea agreement, and appeals the sentence imposed upon him. We affirm the trial court on all issues.

### I.

On September 2, 1985, the defendant, Joel Davis, was indicted on an eighteen count indictment charging him, *inter alia*, with the crimes of conspiracy to murder an Internal Revenue Service ("IRS") agent, 18 U.S.C. § 1117; mail fraud, 18 U.S.C. § 1341; and interstate transportation in aid

of racketeering ("ITAR"), 18 U.S.C. § 1952. The mail fraud and ITAR charges arose out of an incident in which Davis had fraudulently recovered insurance proceeds by hiring an arsonist to destroy a summer bungalow colony owned and insured by Davis. Later, Davis attempted to hire a man to kill an IRS agent who had uncovered the arson scheme and various other criminal accounting practices undertaken by Davis.

At the time of the indictment Davis was residing in Israel, having moved his family there in August 1982, immediately after his coconspirator in both the arson and murder plots, Douglas Sanders, had been indicted by a Maryland grand jury. In February 1987, the United States began formal extradition proceedings against Davis. In October 1988, the District Court of Jerusalem ordered the defendant's extradition for trial in the United States for the crimes of conspiracy to murder, one count of mail fraud, and arson (which was how the Israeli courts interpreted the ITAR charge). Davis was returned to the United States on November 1, 1989.

Upon his return, Davis successfully moved for the murder conspiracy count to be severed from the other charges. Trial commenced on the mail fraud and ITAR counts on May 14, 1990. The chief witness in the Government's case was Sanders, who had acted as middleman between Davis and the hired arsonist. After Sanders' testimony, the defense sought to introduce the testimony of a clinical psychologist who, the defense proffered, would testify as to the psychological characteristics of "defective delinquency," a condition for which Sanders had earlier been diagnosed. A supposed characteristic of the condition was a propensity to lie. The trial court rejected the testimony, ruling that the jury was sufficiently competent to assess Sanders' truthfulness without the aid of an expert.

On June 1, 1990, the jury returned guilty verdicts on both charges. After the jury was dismissed, the court set a trial date for the remaining murder conspiracy charge; the court imposed no sentence on the other charges at this time. The testimony of Sanders again figured to be important to the prosecution in the murder conspiracy case, because Sanders had also allegedly served as middleman between Davis and his hired killer. At a pre-trial hearing on July 10, 1990, the defense again proffered the testimony of the clinical psychologist. The court rejected the testimony "on the basis that was expressed in the first trial."

On the morning of the trial date, Davis pled guilty to the murder conspiracy charge. On November 8, 1990, Davis was sentenced to 15 years of imprisonment on the murder conspiracy count and 3 years each on the mail fraud and ITAR counts to run consecutive to the murder count but concurrent with each other. Davis filed a timely notice of appeal of his sentence. After sentencing, Davis retained new counsel. On December 21, 1990, Davis filed a motion to withdraw his guilty plea. The trial court denied his motion. Davis appeals that decision, and that appeal is consolidated with his earlier appeal of his sentence for present consideration by this court.

## II.

■ Federal Rule of Criminal Procedure 32(d) allows a defendant to withdraw a plea of guilty prior to sentencing for "any fair or just reason." However, after the imposition of sentence, a guilty plea may only be set aside on direct appeal or pursuant to a motion under 28 U.S.C. § 2255. After sentencing, the defendant must prove that failure to allow withdrawal of the guilty plea would result in a "miscarriage of justice." *See, e.g., United States v. Allard,* 926 F.2d 1237 (1st Cir.1991).

In the present case, Davis wisely does not undertake to prove that the refusal to allow him to rescind his guilty plea has resulted in a miscarriage of justice. Instead, Davis' argument is that the guilty plea was void from its inception, having failed to meet the requisite standard of voluntariness under Federal Rule of Criminal Procedure 11 ("The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant

personally in open court, determining that the plea is voluntary and not the result of force or threats....").

Under the defense's theory, the trial court's evidentiary ruling, rejecting the testimony of the defense's proffered expert in clinical psychology, had deprived Davis of his "most potent line of defense" in the murder conspiracy case. Furthermore, Davis was precluded from seeking appellate review of the ruling because the trial court had made the ruling based on the same reasoning as had been articulated in the earlier case. Since Davis had not yet been sentenced in the earlier case, there was no final judgment which would enable Davis to appeal the ruling. According to Davis, the existence of a nonappealable evidentiary ruling, which foreclosed a potentially effective defense, exerted impermissible pressure on him to plead guilty to the murder conspiracy charge, thereby rendering his plea involuntary.

 There is a significant problem with Davis' argument. As Davis concedes in his brief, a defendant has no right to interlocutory review of an adverse ruling on a pre-trial evidentiary motion. Davis attempts to distinguish his situation, arguing that the importation of the evidentiary ruling from the first trial to the second trial resulted in an "effective reunification of the two severed trials," which served to prejudice his position. This argument, though novel, is without merit. The only thing revealed by the record is that the trial judge, in Davis' two separate cases, was confronted with an identical legal question. Not surprisingly, the trial judge, on both occasions, ruled the same way, for the same reasons. Davis had no more right to an interlocutory appeal the second time than he did the first, and no more right than any other defendant to an interlocutory appeal of a pre-trial evidentiary ruling.

In confronting the choice of whether to plead guilty to the murder conspiracy charge or go to trial to preserve the evidentiary issue, Davis did not face a decision different from that of any other defendant faced with an adverse pre-trial ruling. The

Supreme Court has held that a guilty plea is valid where it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). The transcript of the Rule 11 proceeding in this case reveals that the trial court made a completely satisfactory effort to ensure that Davis' plea was voluntary and not, in any way, the product of coercion. In the absence of any compelling reason to override the court system's legitimate concern regarding the finality of judgments, Davis should not be allowed to withdraw his plea.

### III.

Next, Davis argues that a provision of his plea agreement on the murder conspiracy charge was invalid, thereby tainting the entire plea agreement. Specifically, Davis challenges the validity of a provision of the agreement in which he waived his right to appeal his earlier convictions for mail fraud and ITAR.

 First, Davis argues that waivers of appellate rights within a plea agreement are *per se* improper. On this issue, Davis' contentions are directly contradictory to the recent decisions of this court in *United States v. Wiggins,* 905 F.2d 51, 53 (4th Cir.1990) ("It is clear that a defendant may waive in a valid plea agreement the right of appeal ... "), and *United States v. Wessells,* 936 F.2d 165 (4th Cir.1991). Davis attempts to distinguish his situation on the grounds that in this case, he attempted to waive his appellate rights in an entirely different case from the one for which the plea agreement was being negotiated. This distinction is without substance. *Wiggins* is based on the solid proposition that waiver of the statutorily created right to appeal cannot be judged on a stricter standard than waiver of constitutional protections. 905 F.2d at 53. This reasoning is not, and should not be, dependent on whether a defendant waives his appellate rights in the instant action or in an unrelated case. As a consequence, Davis' waiver of his appellate rights on the mail

fraud and ITAR charges was not *per se* invalid. *See, e.g., United States v. Ramos,* 810 F.2d 308 (1st Cir.1987) (upholding defendant's waiver in plea agreement of appellate rights adhering to prior conviction).

■ Once it is established that waivers of appellate rights are not *per se* improper, it must be shown that this particular waiver was based on "a knowing and intelligent decision." *Wessells,* 936 F.2d at 167. The *Wessells* court, in invalidating a waiver of appellate rights, heavily emphasized the fact that the trial judge in that case had not explicitly questioned the defendant on his understanding of the waiver provision. Davis, noting that the trial judge in his case also did not specifically question him on the waiver provision, argues that *Wessells* is dispositive. However, the Supreme Court has noted that, "[t]he determination of whether there has been an intelligent waiver ... must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). In this case, additional circumstances surrounding the waiver indicate that Davis' decision was both knowing and intelligent.

In the course of the Rule 11 proceeding, the trial judge established that Davis was a college graduate and had no difficulty with the English language. Davis had discussed the plea agreement with his counsel, in the estimation of his counsel "at least a hundred times" and "every day for at least a couple of hours a day," including the morning of the day upon which the court accepted Davis' guilty plea. The plea agreement is only two pages in length. Unlike *Wessells,* this is not a case in which an unsophisticated defendant was faced, unprepared, with a difficult choice on whether to waive his appellate rights. We cannot conclude, in light of Davis' educational background and the extensive discussion he had engaged in with his counsel,

that Davis' decision to waive his appellate rights was not "knowing and intelligent." Therefore, we uphold the waiver of appellate rights contained in Davis' plea agreement.[1]

## IV.

■ Finally, Davis argues that the district court violated the principle of specialty when it imposed his sentence. The principle of specialty, as expressed in the applicable United States–Israeli Extradition Treaty, states, "A person extradited under the present Convention shall not be detained, tried or punished in the territory of the requesting Party for any offense other than that for which extradition has been granted." In its sentencing memorandum, the Government makes reference to several instances of illegal accounting practices engaged in by Davis that were included in the initial indictment of Davis as charges of tax fraud. These offenses were not included in the extradition order granted by the Israeli courts. Davis argues that, as a result of the Government's sentencing memorandum, he was punished for offenses in addition to those for which he was extradited.

We note preliminarily that the Circuits are split regarding whether an individual defendant has standing to raise the issue of a violation of the principle of specialty. *Compare, e.g., Shapiro v. Ferrandina,* 478 F.2d 894, 906 (2nd Cir.) (principle of specialty arises out of treaty between two sovereign nations and, thus, is a privilege of the extraditing state, not a right accruing to the accused), *cert. dismissed,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973), *with, e.g., United States v. Cuevas,* 847 F.2d 1417, 1426 (9th Cir.1988) (individual defendant may assert objections that the extraditing nation would be entitled to raise), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989). This court has not yet addressed the issue and, on the facts of this case, we decline to do so. Instead, we find that by failing to object to

---

**1.** We do note, however, as *Wessells* and the instant case would suggest, that trial judges would be well advised to specifically discuss with a defendant, during the Rule 11 proceeding, any waiver of appellate rights contained in the defendant's plea agreement.

the district court in regard to the introduction of this conduct, Davis has waived his right to appeal on this issue.

■ "It is an accepted rule of appellate procedure that ordinarily an appellate court will not consider an issue not raised in the court from which the appeal is taken." *United States v. Eades*, 615 F.2d 617, 621 n. 4 (4th Cir.1980), *rehearing en banc*, 633 F.2d 1075, *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). While this rule is "not inflexible" and will be relaxed to prevent "manifest injustice," *id.*, such circumstances have generally been held to exist only when fundamental rights are involved. *Wratchford v. S.J. Groves & Sons Co.*, 405 F.2d 1061, 1063 (4th Cir. 1969). Because courts construe international treaties as equivalent in supremacy to validly enacted federal law, the principle of specialty articulated by the United States–Israeli Extradition Treaty must be considered no more than a statutorily created right. Protection of this right does not rise to the level of fundamentality that this court has traditionally demanded before addressing a question of law not argued at the district court level. Addressing this issue in the present context would be particularly troublesome because there is no indication whether, or to what extent, the trial court considered the tax fraud information in imposing its sentence. Raising this issue below would have forced the trial court to more precisely detail the basis for its sentence.[2]

### V.

In summary, Davis' guilty plea to the murder conspiracy charge was not influenced by improper coercion and, therefore, the trial court was not in error in refusing to allow Davis to withdraw it. Davis' waiver of his appellate rights on the mail fraud and ITAR charges was based on a "knowing and intelligent decision" and therefore, valid. Finally, Davis is barred from raising for the first time on appeal the issue of violation of the principle of specialty. Accordingly, the judgment of the trial court is hereby

AFFIRMED.

---

**2.** Even if it were assumed that Davis' alleged tax fraud constituted a factor in the trial court's formulation of a sentence, the mere fact that the court considered such acts does not mean that Davis was punished *for* those acts. The situation is analogous to the calculation of a defendant's criminal history category under the Sentencing Guidelines. A trial judge is expressly required to consider past convictions in determining the appropriate incarceration range under the Guidelines despite the fact that punishing a defendant for past convictions would be a direct violation of the Double Jeopardy clause.

Clearly, judicial consideration, during sentencing, of a prior offense is an analytically distinct concept from punishing on the basis of that offense. Similarly, in the present case, the fact that the trial court potentially considered the defendant's prior illegal accounting practices in imposing a sentence does not mean that Davis was punished for those offenses. *See Leighnor v. Turner*, 884 F.2d 385, 388 (8th Cir.1989) (parole commission's consideration of offenses outside scope of extradition order did not violate principle of specialty, despite fact that such consideration "affected the defendant's sentence").