# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 07-1773, 07-2358, 07-2924

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NATHAN J. CLANTON, IBN A.
WILLIAMS, and CARLTON EMBRY,

*Defendants-Appellants.*

_____

Appeals from the United States District Court
for the Western District of Wisconsin.
Nos. 06 CR 217, 06 CR 214, 07 CR 58—**John C. Shabaz**, *Judge.*

_____

ARGUED FEBRUARY 19, 2008—DECIDED AUGUST 14, 2008

_____

Before MANION, KANNE, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* This opinion consolidates for decision three cases argued before this panel on February 19, 2007. All three cases present a similar question—an appeal of a crack sentencing and an argument about the crack/powder cocaine sentencing disparity. We will first address the other, for the most part meritless, issues raised in the individual cases and then move into the

discussion of the crack sentencing ratio, which impacts all three cases. For the reasons discussed herein, we vacate and remand both Williams's and Embry's case for resentencing in light of *Kimbrough* and affirm Clanton's.

### I. Carlton Embry

On April 18, 2007, Carlton Embry was charged in a one-count indictment with possession of more than five grams of cocaine base (crack cocaine) with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He pled guilty on May 25, 2007. On August 2, 2007, he was sentenced to 265 months in prison followed by five years of supervised release plus a $100 special assessment. Embry now appeals that sentence. There are essentially four issues on appeal: (1) that the application of the 100-to-1 cocaine crack/ powder ratio in the sentencing guidelines violates his due process rights; (2) that *Almendarez-Torres* was wrongly decided and that judicial fact finding with respect to convictions not included in the indictment violates his Sixth Amendment rights; (3) that the *Booker* remedial opinion wrongly permits judicial fact finding in violation of the Constitution; and (4) that the inclusion of an "alleged" gang affiliation in his pre-sentence report ("PSR") violates his due process right that the PSR not contain "materially untrue, inaccurate, or unreliable" information. We will address the last three arguments in the following paragraphs and return to the first in the consolidated discussion further below.

Embry argues that judicial fact finding of convictions not included in the indictment violates his rights under

the Sixth Amendment. He asserts that *Almendarez-Torres v. United States*, 523 U.S. 224, 246-47 (1998), was wrongly decided and has been eroded in subsequent case law; so it should be overruled. This argument, of course, must fail, as we have no authority to overrule a decision by the Supreme Court of the United States. As we have held in previous cases, *Almendarez-Torres* is still good law, and we will continue to apply it until the Supreme Court instructs otherwise. *See United States v. Johnson*, 495 F.3d 536, 543-44 (7th Cir. 2007) ("The governing law of the Supreme Court unequivocally states that the fact of a prior conviction *need not* be found by a jury beyond a reasonable doubt, nor must it be alleged in the indictment.").

Embry also contends that the framework established by *United States v. Booker*, 543 U.S. 220 (2005), permits judicial fact finding, violating his constitutional rights. He argues that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Cunningham v. California*, 549 U.S. 270 (2007), he was denied his Sixth Amendment right to trial by jury when the court imposed a sentence under the so-called advisory guidelines. However, contrary to that assertion, we have already found that "*Booker* eliminated the constitutional concern by making the guidelines advisory." *United States v. Martinez*, 518 F.3d 505, 510 (7th Cir. 2008). "*Cunningham* therefore has no effect on post-*Booker* federal practice. District judges remain free, as the remedial portion of *Booker* instructs, to make findings of fact that influence sentences, provided that the sentence is constrained by the maximum set by statute for each crime." *United States v. Roti*, 484 F.3d 934, 937 (7th Cir. 2007); *see also United States v. Shannon*, 518 F.3d 494, 495-96 (7th Cir.

2008). Embry has offered no new compelling reasons or arguments; thus we decline to depart from precedent. *See United States v. Savage*, 505 F.3d 754, 764 (7th Cir. 2007).

Worthy of slightly more consideration, Embry also objects to the inclusion of a gang affiliation allegation in his PSR and requests that it be stricken. The PSR, in ¶ 24, states that a confidential informant told officers that Embry wore a gold medallion with a panther on it, signifying his membership in the Blackstone gang. This is also included as a gang affiliation in the PSR's "Identifying Data" section, labeling Embry as an "alleged Blackstone." Embry objected, arguing that this information is materially untrue; the medallion was not recovered in any searches, and a panther is not a symbol for the Blackstone gang.

Embry argues that he has a due process right to a PSR that does not contain "materially untrue, inaccurate, or unreliable" information. Embry does have a due process right not to be *sentenced* based on a PSR that contains materially untrue, inaccurate, or unreliable information, but he does not, as he phrased it, have a due process right to have a PSR free of those things. If the judge did not *rely* on the allegedly inaccurate information, then there can be no due process violation.

> There is no doubt that a criminal defendant has a due process right to have the court consider only accurate information when imposing sentence, and that this right may be violated when the court considers information which is inaccurate. To succeed on such a claim the defendant must demonstrate that the infor-

> mation before the court was inaccurate and that *the court relied on it.*

*United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir. 1992) (emphasis added) (citing *United States v. Tucker*, 404 U.S. 443, 447 (1972) and *United States v. Musa*, 946 F.2d 1297, 1306 (7th Cir. 1991)); *see also United States v. Hankton*, 432 F.3d 779, 790 (7th Cir. 2005). Here, Embry has not even argued that the judge considered or relied in any way on the alleged gang membership in his sentencing. Thus, the inclusion of the alleged gang affiliation in the PSR does not violate Embry's due process rights.

While similar to the due process evaluation, we also consider separately whether the district court violated the Federal Rules of Criminal Procedure. Under Federal Rule of Criminal Procedure 32(i)(3)(B)-(C), a court, at sentencing, must

> for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing; and must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons.

It appears that the sentencing judge did not comply with Rule 32, because the record contains neither a ruling on the dispute nor a clear statement that the matter would not affect sentencing. He said:

> And finally, we look to the gang member concern. Defendant asserts that the allegation made by the

> confidential informant as it relates to him being a Black Stone gang member is materially untrue. He requests that the information be stricken. Under the identifying data section of the presentence report, the Court believes that it has been noted that this affiliation is alleged and the Court will not make that determination to remove the information from the presentence report at this time.

While perhaps implying as much, the sentencing judge, nevertheless, did not outright say that the gang allegation would not impact the sentence. However, on appeal, Embry's claim is not that the gang affiliation did somehow affect his sentence, but instead that it has the potential to affect him negatively in prison, depending on what the Bureau of Prisons ("BOP") does with the information of this alleged affiliation.

It is readily arguable that one of the purposes of Rule 32(i)(3) is to ensure that the PSR contains accurate information for the BOP. *See, e.g.*, *United States v. Pless*, 982 F.2d 1118, 1128 (7th Cir. 1992) ("The provision serves two purposes . . . (2) to provide prison and parole authorities with a clear record of how such disputes were resolved."). But this "purpose" can only be incidental with respect to the information in the PSR which has no impact on the sentence itself. Otherwise, instead of indicating that a matter will not impact sentencing, the sentencing judge would have to rule on every issue simply because it might impact BOP decisions. The Advisory Committee notes to the 2002 Amendments specifically discuss this concern. Fed. R. Crim. P. 32 advisory committee notes (2002). An amendment was considered that would have

required the court to rule on any "unresolved objection to a material matter" regardless of its impact on the sentence specifically because of the potential post-sentencing impact. *Id.* However, the Committee chose not to adopt this amendment, explaining that "[t]o avoid unduly burdening the court, the Committee elected not to require the resolution of objections that go only to service of sentence." *Id.*; *see also United States v. Saeteurn*, 504 F.3d 1175, 1178-81 (9th Cir. 2007). Thus, the resolution of questions impacting only post-sentencing decisions, while often useful and encouraged, is nevertheless not *required* under Rule 32. Therefore, the sentencing judge's failure to rule on Embry's alleged gang membership is not a violation of Rule 32.

The only remaining possible error is a technical violation of Rule 32. As we mentioned, it is not explicit in the record that the sentencing judge determined that the gang information would not affect sentencing, thus rendering a ruling on the question unnecessary. However, there are no "magic words," and since no one disputes that the alleged affiliation did not impact the sentence, it is not apparent that there was an error. In other words, considering no one contends that the gang affiliation *did* impact the sentence, perhaps the sentencing judge's statement made that sufficiently clear. Furthermore, even if we were to find the record's absence of an explicit indication that the gang affiliation would not impact the sentence to be error, it would be harmless. *See United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005); *United States v. Slaughter*, 900 F.2d 1119, 1123 (7th Cir. 1990). There

is no argument that Embry's sentence was impacted; the only potential harm is what the BOP might do with the information. As we already explained, that type of harm is not overtly protected by the Rule. However, even if we were to remand, the sentencing judge could simply put into the record that the alleged gang affiliation was not considered in the sentencing. Such a result is effectively no different than the present situation, and would not provide the remedy—striking the affiliation—that Embry desires. Moreover, the gang affiliation, as the sentencing judge emphasized, is noted as "alleged" in the PSR, an indication on its face which demonstrates to the BOP that the judge made no ruling as to gang membership. The alleged harm is also entirely speculative at this point, and if such concrete harm occurs later, Embry has other avenues of redress that he can pursue through the BOP. Thus, while we take this opportunity to remind judges to be explicitly clear in their rulings with respect to Rule 32, any technical violation of the rule in the instant case is harmless.

## II.  Nathan Clanton

Nathan Clanton was charged, in a two-count indictment, with distributing five grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). He was arraigned on December 19, 2006, and pled not guilty. On January 30, 2007, he pled guilty to count one pursuant to a written plea agreement. On April 3, 2007, at the sentencing hearing, the district court sentenced Clanton, following the applicable guidelines range, to 212 months' imprisonment, five years' supervised release, and a $100 special assess-

ment. The court dismissed count two of the indictment. On appeal, Clanton makes two arguments: (1) that his sentence is unreasonable and the crack/powder cocaine disparity reflected in the guidelines does not comport with the statutory purposes of sentencing; and (2) that his misdemeanor battery offense, for which he was subject to over one year in prison under Wisconsin's habitual offender statute, should not qualify as a predicate offense under the career offender provisions of the guidelines. His ratio argument will be discussed below.

With respect to his second argument, Clanton argues that he does not qualify as a career offender. He claims that the court should not have counted the battery as a felony—instead of looking at the punishment with the recidivism enhancement, the court should have looked at the maximum punishment for the base offense. Our review is only for plain error, since Clanton raises this issue for the first time here on appeal. Our decision in *United States v. Bissonette*, 281 F.3d 645 (7th Cir. 2002), flatly forecloses Clanton's argument. Clanton admits as much and cites *Rodriquez*, a Ninth Circuit case, in which, at the time of briefing, the Supreme Court had granted certiorari. *United States v. Rodriquez*, 464 F.3d 1072 (9th Cir. 2006), *cert. granted*, 128 S. Ct. 33 (2007). The case dealt with the Armed Career Criminal Act ("ACCA"), under which "a state drug-trafficking conviction qualifies as 'a serious drug offense' if 'a maximum term of imprisonment of ten years or more is prescribed by law' for the 'offense.'" *United States v. Rodriquez*, 128 S. Ct. 1783, 1786 (2008) (citing 18 U.S.C. § 924(e)(2)(A)(ii)). The question before the Court was whether the "maximum term of imprisonment prescribed by law" is the "5-year ceiling for the first offenses"

or "the 10-year ceiling for second or subsequent offenses."
*Id.* at 1787. In May the Court issued its decision, finding
"[i]n sum, a straightforward application of the language
of ACCA leads to the conclusion that the 'maximum term
of imprisonment prescribed by law' in this case was
10 years." *Id.* at 1788. Given this conclusion, *Rodriquez* does
not help Clanton, *Bissonette* unquestionably governs the
case, and we need not address the issue any further.

### III.  Ibn Williams

Ibn Williams was charged with possession with intent
to distribute more than five grams of cocaine base in
violation of 21 U.S.C. § 841(a)(1). He pled guilty on
March 21, 2007. The PSR calculated 129.76 grams of cocaine
base, putting his offense level at 32. With a two-level
increase for possessing a dangerous weapon and a three-
level decrease for acceptance of responsibility, the total
offense level was 31. His criminal history category was I,
putting the sentence range at 108-135 months. At the
sentencing on May 30, 2007, the judge sentenced Williams
to 108 months in prison, followed by four years of super-
vised release, plus a $100 criminal assessment. On appeal,
Williams argues (1) that the sentence was unreasonable
and the judge should be permitted to reject the 100-to-1
ratio, and (2) that the court used the term "advisory" with
respect to the guidelines but in reality treated them as
mandatory.

Williams claims that the sentencing judge only gave lip
service to the "advisory" nature of the sentencing guide-
lines, violating *Booker*, 543 U.S. 220 (2005). Williams fails,

however, to produce adequate support for this argument. The sentencing judge correctly and consistently referred to the guidelines as advisory. He also went through the appropriate steps, calculating the guideline range and then considering individual factors with respect to Williams. He concluded that the given sentence was "reasonable and necessary to hold the defendant accountable for his serious conduct, to serve as a deterrent to him, to protect the community from further criminality on his part, and to achieve parity with the sentences of similarly situated defendants . . . ."

The majority of the examples Williams cites in support of his position are the judge's references to the 100-to-1 crack ratio. This, however, is not at all persuasive, since prior to *Kimbrough*, under our precedent, that aspect of the guidelines was effectively mandatory and district court deviations would have been futile. Therefore, the comments from the sentencing judge were not surprising and cannot now reasonably be used to argue he did not, generally speaking, properly treat the guidelines as advisory. (With respect to any specific failing to treat the ratio as advisory, our decision, discussed below, regarding the ratio and *Kimbrough* adequately take care of that concern.) Since Williams has failed to point to anything persuasive in the record before us to make his point, he cannot prevail on this issue.

## IV.  The 100-to-1 Crack Ratio, Considerations Post-*Kimbrough*

The Defendants in these three cases put forth arguments, in various forms, that the application of the 100-to-1

crack ratio in the sentencing guidelines was in some way improper, unreasonable, and/or unconstitutional. While these cases were making their ways through the appeals process, the United States Supreme Court decided *Kimbrough v. United States*, 128 S. Ct. 558 (2007). In *Kimbrough* the Court held that the 100-to-1 ratio in the guidelines is not dictated by statute, but rather is advisory, like the rest of the sentencing guidelines, and the district court may accordingly depart from § 2D1.1's 100-to-1 ratio. *Id.* at 564; *see United States v. Taylor*, 520 F.3d 746 (7th Cir. 2008). Since our circuit precedent prior to *Kimbrough* held that it would be unreasonable for a judge to depart from the ratio, it is understandable that district judges did not attempt to do so. With this in mind, we now must determine what to do with these cases.

We found in *Taylor* that a limited remand was appropriate in cases where the defendant did not object to the ratio in the district court, 520 F.3d at 747-48, growing out of a plain-error standard similar to the one used when the *Booker* Court first held that the guidelines were advisory, *see United States v. Paladino*, 401 F.3d 471, 481-84 (7th Cir. 2005). We also held, in both the *Booker* and *Kimbrough* contexts, that if the district judge had made clear that she would sentence the defendant the same regardless, then a remand would be unnecessary. *United States v. White*, 519 F.3d 342, 349 & n.6 (7th Cir. 2008); *see also Taylor*, 520 F.3d at 746-47. However, the three cases before us now are distinguishable from *Taylor*, because Embry, Clanton, and Williams each objected to the ratio below. Thus, we are not governed by a plain-error standard of review, and the limited remand would not apply. We review for abuse

of discretion. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). The Court in *Gall* explained that "[r]egardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard," first ensuring there was no procedural error such as "treating the Guidelines as mandatory" or "failing to consider § 3553(a) factors." *Id.* Then "[a]ssuming that the district court's sentencing decision is procedurally sound, the appellate court should . . . consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* However, this distinction between abuse-of-discretion and plain-error review creates no significant practical impact in this case, since the same issues concerning us in *Taylor* must be dealt with here, and the remedy differs only in the form of remand.

In all three cases the defendants argued the unfairness of the ratio under the 18 U.S.C. § 3553(a) factors in the district court. The sentencing judge addressed the objection to the ratio in each case, but it is clear from his comments that he viewed himself duty-bound by Congress and our precedent to unwaveringly stick with the ratio. Embry and Clanton were sentenced near the middle of their guidelines range. Williams was sentenced at the low end of his range. It is not certain from the records in any of these cases that the sentencing judge would have given the same sentences even without the guidelines; thus, like *Taylor*, we are not in a position to find that remands would be unnecessary.

Given the holding in *Kimbrough*, we find that remand is readily warranted in Williams's case to allow the dis-

trict court judge an opportunity to determine whether or not to sentence differently. We conclude that it was an abuse of discretion to summarily dismiss the crack disparity argument by effectively treating the ratio as mandatory and not to consider its merits under § 3553. *See Gall*, 128 S. Ct. at 597. This is similar to our conclusion in *Taylor* and similar to post-*Kimbrough* decisions from our sister circuits. On remand the district judge can consider the § 3553(a) arguments now knowing the crack ratio is advisory. For these reasons, with respect to the Williams case, we remand for re-sentencing. This does not end the discussion, however, for defendants Embry and Clanton.

Clanton and Embry, unlike Kimbrough, Taylor, and Williams, did not have a guidelines range calculated solely under § 2D1.1 of the guidelines, which is where the infamous crack ratio is imbedded; they were career offenders sentenced pursuant to the career offender guideline, § 4B1.1. Thus, we must determine to what extent, if any, the Court's decision in *Kimbrough*, which technically addressed § 2D1.1, affects their sentences. Under § 4B1.1, the offense level is calculated as it would be if the defendant were not a career offender (for defendants Clanton and Embry this calculation was made pursuant to § 2D1.1). Then, the offense level is calculated using the table in the career offender provision. Section 4B1.1(b) explains that the higher offense level of the two will apply.

In Embry's case the offense level under the career offender guideline table in § 4B1.1(b) was 34, and the offense level with the reference back to § 2D1.1 was 36.

Since the offense level calculated under § 2D1.1 was higher than under § 4B1.1(b), Embry's offense level was 36. Thus while technically sentenced under § 4B1.1, the calculation done according to § 2D1.1 ultimately applied. Thus, he was effectively sentenced under the guideline's crack ratio. Remanding his case is appropriate, then, since the *Kimbrough* decision has the obvious potential to impact his sentence.

Clanton's case, however, is a different matter. His offense level under § 2D1.1 was 32; under the § 4B1.1(b) table it was 34. The career offender offense level was higher, and was therefore the one ultimately used to calculate his sentence. The career offender guideline in § 4B1.1, unlike § 2D1.1's drug quantity table, does not include a crack ratio. The guideline references the "offense statutory maximum," which in this case refers to the 40 year maximum found in 21 U.S.C. § 841(b)(1)(B) for possession of 5 grams or more of cocaine base or 500 or more grams of powder cocaine, to establish the offense levels. Thus any crack disparity is attributable to the *statute* not the guidelines. This is the same issue addressed in our recent case, *United States v. Harris*, in which we noted that "[w]hile the sentencing guidelines may be only advisory for district judges, congressional legislation is not." No. 07-2195, 2008 WL 3012362, *12 (7th Cir., Aug. 6, 2008). We then concluded, following our sister circuits, that "a sentence entered under the career offender guideline, § 4B.1.1, raises no *Kimbrough* problem because to the extent it treats crack cocaine differently from powder cocaine, the disparity arises from a statute, not

from the advisory guidelines." *Id*. at *13. Clanton's case is indistinguishable from *Harris*. Therefore, we conclude that Clanton is not entitled to a remand as *Kimbrough* does not impact his sentence.

## V. Conclusion

With respect to defendants Williams and Embry, we VACATE the sentences and REMAND for resentencing in light of *Kimbrough*, giving the district judge an opportunity to consider and address the crack disparity argued by the defendants; we AFFIRM the district court's decisions on the other appealed issues. With respect to defendant Clanton, we AFFIRM in the totality.