**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 08-4237**

─────────

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

GIUSEPPE PILEGGI,

            Defendant - Appellant.

─────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, District Judge.  (3:06-cr-00151-FDW-1)

─────────

Argued:  October 29, 2009             Decided:  January 20, 2010

─────────

Before TRAXLER, Chief Judge, and GREGORY and DAVIS, Circuit Judges.

─────────

Vacated and remanded with instructions by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Davis joined. Chief Judge Traxler wrote a dissenting opinion.

─────────

**ARGUED:**  Frank Alan Abrams, LAW OFFICE OF FRANK ABRAMS, PLLC, Asheville, North Carolina, for Appellant.  Ellen Ruth Meltzer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Ed R. Ryan, Acting United States Attorney, Charlotte, North Carolina; Patrick M. Donley, Peter B. Loewenberg, Fraud Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

─────────

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Following his extradition to the United States, Appellant Giuseppe Pileggi was convicted of numerous counts of fraud based on operating a fraudulent sweepstakes scheme out of Costa Rica targeting U.S. citizens. The district court then sentenced Pileggi to 600 months in prison. Pileggi now argues that the district court arrived at this sentence by relying on clearly erroneous facts, thus making his term of imprisonment procedurally unreasonable. For the reasons set forth below, we vacate Pileggi's sentence and remand for resentencing.

I.

Pileggi, a fifty year-old Canadian citizen who lived in San Jose, Costa Rica, and more than four dozen co-conspirators ran an elaborate fraudulent sweepstakes scheme operating out of Costa Rica that primarily targeted elderly citizens of the United States. In total, at least 600 to 650 people were victimized, and the scheme grossed $8,381,962 from April 2003 until May 2006. (J.A. 48, 554, 764.)[1]

On May 16, 2006, Costa Rican authorities searched sixteen sites for evidence relating to the fraud, including Pileggi's

---

[1] Citations herein to "(J.A. __)" refer to the contents of the Joint Appendix filed by the parties in this appeal.

3

home and car accessory business.  At the request of the United States, Pileggi was then taken into custody by Costa Rican authorities on May 16, 2006.  Pileggi remained in Costa Rican jail until the United States reached an agreement with Costa Rica for his extradition.

The agreement, dated October 27, 2006, between Costa Rica and the United States was reflected in a diplomatic note.  The "Diplomatic Note of Assurances between the United States and Costa Rica" provided that "Costa Rica requested assurances that, upon extradition to the United States . . . Giuseppe Pileggi . . . will not be subjected to the death penalty or life imprisonment."  (J.A. 16.)  In response, the United States assured "the Government of Costa Rica that if extradited . . . . Giuseppe Pileggi . . . will not receive a penalty of death or one that requires that [he] spend the rest of [his] natural [life] in prison."  (J.A. 17.)[2]

On December 5, 2006, Pileggi was indicted in the U.S. District Court for the Western District of North Carolina for one count of conspiracy to commit wire fraud, mail fraud and travel fraud, in violation of 18 U.S.C. § 371 (2006), and twenty-two counts of wire fraud, in violation of 18 U.S.C.

---

[2] Both parties agree that diplomatic assurances reflecting agreement between parties to an extradition treaty are to be enforced by the courts.

§§ 1343 & 2.[3]  On January 31, 2008, Pileggi was convicted on all counts,[4] and sentencing was set for September 24, 2008.

Prior to sentencing, a Presentence Investigation Report ("PSR") was generated by the United States Department of Probation.  The PSR stated that "based on a total offense level of 43 and a criminal history category of I [Pileggi had no prior convictions], the guideline range for imprisonment is life." (J.A. 826.)  The PSR section entitled "Circumstances That May Warrant Departure" mentions that an extradition treaty between the United States and Costa Rica governs the extradition relationship between the two countries.  (J.A. 828.) Additionally, the PSR accurately stated the terms of the Diplomatic Note.  At the same time, the PSR suggested "imposing a sentence where a portion of these counts run concurrently in order to achieve a sentence of 540 months (or 45 years) which is essentially a life sentence for this defendant."  (Id.)

At sentencing, the Government made the following misrepresentation about the assurances it provided to Costa Rica:  "the United States, we gave a sentencing assurance to the government of Costa Rica that we would not seek a sentence in

---

[3]  The indictment also included a criminal forfeiture allegation.

[4]  The Government dismissed Count 18.

5

excess of 50 years." (J.A. 756.) When the court asked if this bound the court or the executive branch, the Government responded, "I think technically what it says is that the United States, the executive branch will not seek a sentence in excess of fifty years or death." (Id.)

At the conclusion of the hearing, the district court determined that it was unable to render a life sentence based on the statutory maximums for the counts on which Pileggi was convicted. (J.A. 762-63.) Rather, it found that it must sentence him to a term of months. After a review of the factors set out in 18 U.S.C. § 3553 and the Government's representation that it assured Costa Rica that it could not seek a sentence greater than fifty years, the court sentenced fifty year-old Pileggi to 600 months (fifty years) of incarceration, followed by three years of supervised release.[5]

## II.

Pileggi contends that his sentence is procedurally unreasonable. We review a sentence for reasonableness under an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). When reviewing reasonableness, we "must first ensure that the district court committed no significant

---

[5] Additionally, Pileggi was ordered to pay restitution of $3,952,985 and to forfeit $8,381,962 to the United States.

6

procedural error," which includes: "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." Id.

Pileggi did not, however, raise the issue of his sentence's procedural reasonableness below. When a defendant fails to object to the procedural reasonableness of a given sentence, appellate courts are split over whether plain-error review applies.[6] To prevail under plain error review, Pileggi must demonstrate that: (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights.

---

[6] The First, Second, Sixth, Eighth, Ninth, Tenth, and District of Columbia circuits agree that plain-error review applies. See, e.g., United States v. Pakala, 568 F.3d 47, 56 (1st Cir. 2009); United States v. Eads, No. 07-3923, 2009 WL 1324230, at *1 (8th Cir. May 14, 2009); In re Sealed Case, 527 F.3d 188, 191-92 (D.C. Cir. 2008); United States v. Ciappetta, 284 Fed App'x 854, 855 (2d Cir. 2008); United States v. Cook, 550 F.3d 1292, 1297-98 (10th Cir. 2008); United States v. Vonner, 516 F.3d 382, 385-86 (6th Cir. 2008); United States v. Waknine, 543 F.3d 546, 549 (9th Cir. 2008). The Third and Seventh circuits, however, apply the reasonableness review that typically applies to sentencing. See, e.g., United States v. Sevilla, 541 F.3d 226, 230-31 (3d Cir. 2008); United States v. Castro-Juarez, 425 F.3d 430, 433-34 (7th Cir. 2005). This Court has previously held in unpublished opinions that plain-error review is appropriate. United States v. Flores-Ansencio, 297 Fed. App'x 226, 227 (4th Cir. 2008); United States v. Garcia, 233 Fed. App'x 311, 312 (4th Cir. 2007).

United States v. Olano, 507 U.S. 725, 732 (1993).  If these three elements are met, this Court may exercise its discretion to notice error only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  Id. (internal quotation marks and citations omitted); United States v. Hughes, 401 F.3d 540, 547-48, 550 (4th Cir. 2005).  We need not decide whether plain-error or reasonableness review applies here because under either standard, Pileggi's sentence is procedurally unreasonable.

III.

Pileggi contends that the district court committed a significant procedural error when it sentenced him to 600 months of imprisonment.  Specifically, Pileggi argues that the district court relied on clearly erroneous facts to arrive at the sentence, namely the Government's misrepresentation concerning the diplomatic assurances given to Costa Rica to secure Pileggi's extradition.  We agree.

The United States provided the Costa Rican authorities with diplomatic assurances, one of which was that a number of suspects, including Pileggi, would not receive the death penalty or a sentence that requires he spend the rest of his natural life in prison.  Rather than providing this information to the court, the Government informed the court that the United States

8

had assured Costa Rican authorities that "the executive branch will not seek a sentence in excess of fifty years or death." (J.A. 756.) Although we accept that the misstatement was inadvertent, the statement put indisputably false information before the district court during sentencing. Furthermore, at no time was the error corrected. The Government instead sought a fifty-year sentence, arguing that "a sentence of 50 years in a crime so extraordinarily heinous warrants this kind of sentence." (J.A. 760.)

The district court then considered that the Guidelines provided a sentencing range of life, but that the court was bound by statutory maximums to sentence Pileggi to a term of months. The PSR did not mention or recommend that Pileggi receive a sentence of fifty years. Rather, it noted that "the Court may wish to consider imposing a sentence where a portion of [the] counts run concurrently in order to achieve a sentence of 540 months (or 45 years) which is essentially a life sentence for this defendant." (J.A. 799.) The court then sentenced Pileggi to 600 months (fifty years) of imprisonment. The only mention of a fifty-year sentence came during the Government's misrepresentation of the diplomatic assurances. Therefore, in sentencing Pileggi to a term of fifty years, the court relied on clearly erroneous facts, which is a significant procedural error. Gall, 552 U.S. at 51.

9

Under plain-error review, there is no doubt that this significant procedural error is plain. Moreover, this error affected Pileggi's substantial rights because it affected his sentence. See United States v. Basham, 561 F.3d 302, 334 (4th Cir. 2009) (noting that an error that affects "the outcome of the penalty phase" is an error affecting a substantial right). Given the Government's misrepresentation, we have zero confidence that had the district court known the true content of the assurances provided to Costa Rica, it would have sentenced Pileggi to 600 months in prison. The only reference during sentencing to the assurances provided to Costa Rica was erroneous, and the sentence arrived at by the court mirrored the Government's misstatement. In addition, no information independent from the misstatement was before the court that suggested a sentence of fifty years in prison.

Finally, while we harbor no doubt as to Pileggi's guilt or the seriousness of his crimes, there is no question that this sentencing error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 732. The district court relied on false information given to it by the Government to arrive at a term of imprisonment that exceeded Pileggi's life expectancy. This reliance by the district court on the Government's misstatement is a fundamental affront to the fairness and integrity of judicial proceedings.

The Government contends that the district court properly calculated Pileggi's Guidelines range, treated the Guidelines as advisory, considered the applicable 18 U.S.C. § 3553(a) factors, and explained its reasoning. This argument entirely neglects that the Supreme Court has unambiguously held that a sentence is procedurally unreasonable if "based on clearly erroneous facts." Gall, 552 U.S. at 51.

IV.

Because the district court found that it "just [did] not believe a man that could target elderly individuals and deprive them of their life savings [would] be a productive citizen at any time in his life," (J.A. 763-65), and then arrived at a de facto life sentence using clearly erroneous facts, we vacate Pileggi's 600-month sentence and remand with instructions that the case be reassigned for resentencing.

VACATED AND REMANDED WITH INSTRUCTIONS

11

TRAXLER, Chief Judge, dissenting:

Giuseppe Pileggi argues that we ought to vacate his sentence because the government misstated the terms of the diplomatic assurances provided to Costa Rica by the United States in connection with his extradition. Because he failed to correct the government's incomplete description or even object to his sentence as inconsistent with the extradition assurances between the United States and Costa Rica, Pileggi faces the substantial task of demonstrating plain error. I do not believe Pileggi carried his burden in this regard and therefore respectfully dissent.

In order to satisfy the plain error standard, Pileggi must show: (1) an error was made; (2) the error is plain; and (3) the error affects substantial rights. See United States v. Olano, 507 U.S. 725, 732 (1993). Significantly, the defendant, not the government, "bears the burden of satisfying each of the elements of the plain error standard." United States v. Massenburg, 564 F.3d 337, 343 (4th Cir. 2009) (citing United States v. Vonn, 535 U.S. 55, 59 (2002)). Moreover, "[t]he decision to correct the error lies within our discretion, and we exercise that discretion only if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Id. (quoting Olano, 507 U.S. at 732).

12

In my view, Pileggi failed to establish the primary, fundamental requirement that an error by the judge in fact occurred. See United States v. Hastings, 134 F.3d 235, 239 (4th Cir. 1998) ("In reviewing for plain error, our initial inquiry is whether an error occurred."). It is difficult to discern, even from a careful reading of Pileggi's brief, precisely what error or errors he believes the district court committed. His primary claim seems to be that the government misled the court, albeit inadvertently, as to the terms of extradition, and that the district court committed an error when it "t[ook] the government's statement as true." Brief of Appellant at 18. To the extent that Pileggi is arguing that the district court imposed a sentence based on clearly erroneous factual findings, he cannot demonstrate that the district court's factual conclusions were not "plausible in light of the record as a whole." United States v. Trujillo, 502 F.3d 353, 356 (5th Cir. 2007). Although the presentence report accurately summarized the diplomatic assurances, the materials submitted to the district court for sentencing did not include the actual correspondence from the State Department to Costa Rica containing the diplomatic assurances. Thus, it appears the only information before the district court relating to the diplomatic assurances consisted of brief summaries by the Assistant United States Attorney and the Probation Officer. Such a record is

13

hardly enough to conclude that the district court made clearly erroneous factual findings and I am not "left with the definite and firm conviction that a mistake has been committed." United States v. Hill, 473 F.3d 112, 115 (4th Cir. 2007) (internal quotation marks omitted).

Pileggi also fails to establish an error to the extent he is arguing simply that the district court sentenced him based on false information, which is essentially a due process argument. See, e.g., U.S. v. Clanton, 538 F.3d 652, 655 (7th Cir. 2008) ("There is no doubt that a criminal defendant has a due process right to have the court consider only accurate information when imposing sentence, and that this right may be violated when the court considers information which is inaccurate." (internal quotation marks omitted)). "A due process violation is established only if the defendant shows that the district court relied on materially false information and that the information is demonstrably the basis for the challenged sentence." United States v. Carr, 66 F.3d 981, 983 (8th Cir. 1995) (per curiam). Pileggi does not carry his burden merely by pointing out the fact that the district court was presented with inaccurate information. See Clanton, 538 F.3d at 655 (explaining that there is no "due process right to have a PSR free of [materially untrue, inaccurate information]" and there is no error unless "the judge . . . [relied] on the allegedly inaccurate

14

information"). In imposing a sentence within the advisory guideline range, the district court during its thorough explanation of the selected sentence did not refer in any way to the terms of extradition. Pileggi is simply speculating that the district court relied on the government's misstatement. Because the burden is allocated to him in the plain error context, I would conclude that Pileggi failed to establish an error that is plain.

Even assuming there is plain error here, Pileggi clearly has failed to show that the error affected his substantial rights. An error that affects substantial rights is an error that has a prejudicial effect on the outcome, meaning there is "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004) (alteration in original) (internal quotation marks omitted). Unlike harmless error analysis, which requires the government to show that the error did not have a prejudicial effect on the outcome, the plain error doctrine places the burden with the defendant to make an affirmative showing of prejudice. See Massenburg, 564 F.3d at 343.

In light of the sentence ultimately imposed, Pileggi simply cannot make such a showing. First, the district court's sentence, stiff though it may have been, was consistent with the

15

diplomatic assurance given to the government of Costa Rica that Pileggi and his co-conspirators, if convicted, would "not receive a penalty of death or one that requires that they spend the rest of their natural lives in prison." J.A. 17. Pileggi claims that at his age (he was 48 years old at sentencing), a 600-month sentence is no different than a life sentence. But that is incorrect; a sentence that is <u>effectively</u> a life sentence is still not a life sentence. Pileggi refers to the mortality tables and invites us to do some sort of actuarial analysis to determine if, in fact, he received a life sentence. The problems with such an "effective life sentence" approach are obvious, beginning with the fact that a court would have to make an ad hoc determination regarding whether a substantial prison term should be regarded as a life sentence based on a defendant's age and health factors.[*]

Second, and more importantly, Pileggi points to absolutely nothing in the record from which I can conclude that, had the

---

[*] I recognize, of course, the equitable appeal of the "effective life sentence" argument. The problem is where to draw the line in a case like this in which it is conceivable that the entire sentence could be served; we should refrain from doing so. Indeed, I am not certain how the district court on remand is to determine whether the sentence is effectively one for life or not. In the end, the solution lies with the executive branches of the parties to a given extradition treaty which could, if so desired, account for the possibility of an "effective life sentence" during the extradition process.

district court been accurately informed about the diplomatic assurances, there is a reasonable probability that the court would have imposed a lesser sentence. Without anything concrete, Pileggi is just speculating. In the plain error review context, it is not the government's burden to convince the court that, had the accurate information been available, the district court would have imposed the same sentence. Rather, it is Pileggi's burden to establish a reasonable probability that he would have received a more favorable sentence.

Finally, even when there is a plain error that affects substantial rights, the court should exercise its discretion to correct the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," Olano, 507 U.S. at 732 (alteration in original) (internal quotation marks omitted), or "in the case of actual innocence of the defendant," United States v. David, 83 F.3d 638, 647 (4th Cir. 1996). Pileggi makes no claim of actual innocence, and these circumstances, in my view, clearly do not undermine the fairness or reputation of our judicial process. Indeed, on at least one previous occasion, we refused even to address a defendant's argument that his sentence violated the terms of an international extradition treaty to which the United States was party. See United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992). Significantly, we explained that the violation of the

17

relevant terms of extradition "does not rise to the level of fundamentality that this court has traditionally demanded before addressing a question of law not argued at the district court level." Id. Thus, I would not exercise our discretion to correct such an error.

For the foregoing reasons, I respectfully dissent. Furthermore, I see no reason to reassign this case to another district judge, particularly in light of the fact that the alleged error was one created by the parties' combined failure to correctly inform the district judge about the diplomatic assurances related to Pileggi's extradition. In explaining his basis for imposing Pileggi's sentence as the law requires him to do, the district judge revealed no bias or other reason suggesting he is unable or unwilling to impose a proper sentence on remand. I fear a reassignment under these circumstances sends a confusing and troublesome message to the district judges in this circuit.