TRAXLER, Chief Judge,
dissenting:
Giuseppe Pileggi argues that we ought to vacate his sentence because the government misstated the terms of the diplomatic assurances provided to Costa Rica by the United States in connection with his extradition. Because he failed to correct the government’s incomplete description or even object to his sentence as inconsistent with the extradition assurances between the United States and Costa Rica, Pileggi faces the substantial task of demonstrating plain error. I do not believe Pileggi carried his burden in this regard and therefore respectfully dissent.
In order to satisfy the plain error standard, Pileggi must show: (1) an error was made; (2) the error is plain; and (3) the error affects substantial rights. See United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Significantly, the defendant, not the government, “bears the burden of satisfying each of the elements of the plain error standard.” United States v. Massenburg, 564 F.3d 337, 343 (4th Cir.2009) (citing United States v. Vonn, 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002)). Moreover, “[t]he decision to correct the error lies within our discretion, and we exercise that discretion only if the error ‘seriously affects the fairness, integrity or public reputation of judicial proceedings.’ ” Id. (quoting Olano, 507 U.S. at 732, 113 S.Ct. 1770).
In my view, Pileggi failed to establish the primary, fundamental requirement that an error by the judge in fact occurred. See United States v. Hastings, 134 F.3d 235, 239 (4th Cir.1998) (“In reviewing for plain error, our initial inquiry is whether an error occurred.”). It is difficult to discern, even from a careful reading of Pileggi’s brief, precisely what error or errors he believes the district court committed. His primary claim seems to be that the government misled the court, albeit inadvertently, as to the terms of extradition, and that the district court committed an error when it “t[ook] the government’s statement as true.” Brief of Appellant at 18. To the extent that Pileggi is arguing that the district court imposed a sentence based on clearly erroneous factual findings, he cannot demonstrate that the district court’s factual conclusions were not “plausible in light of the record as a whole.” United States v. Trujillo, 502 F.3d 353, 356 (5th Cir.2007). Although the presentence report accurately summarized the diplomatic assurances, the materials submitted to the district court for sentencing did not include the actual correspondence from the State Department to Costa Rica containing the diplomatic assurances. Thus, it appears the only information before the district court relating to the diplomatic assurances consisted of brief summaries by the Assistant United States Attorney and the Probation Officer. Such a record is hardly enough to conclude that the district court made clearly erroneous factual findings and I am not “left with the definite and firm conviction that a mistake has been committed.” United States v. Hill, 473 F.3d 112, 115 (4th Cir.2007) (internal quotation marks omitted).
Pileggi also fails to establish an error to the extent he is arguing simply that the *480 district court sentenced him based on false information, which is essentially a due process argument. See, e.g., U.S. v. Clanton, 538 F.3d 652, 655 (7th Cir.2008) (“There is no doubt that a criminal defendant has a due process right to have the court consider only accurate information when imposing sentence, and that this right may be violated when the court considers information which is inaccurate.” (internal quotation marks omitted)). “A due process violation is established only if the defendant shows that the district court relied on materially false information and that the information is demonstrably the basis for the challenged sentence.” United States v. Carr, 66 F.3d 981, 983 (8th Cir.1995) (per curiam). Pileggi does not carry his burden merely by pointing out the fact that the district court was presented with inaccurate information. See Clanton, 538 F.3d at 655 (explaining that there is no “due process right to have a PSR free of [materially untrue, inaccurate information]” and there is no error unless “the judge ... [relied] on the allegedly inaccurate information”). In imposing a sentence within the advisory guideline range, the district court during its thorough explanation of the selected sentence did not refer in any way to the terms of extradition. Pileggi is simply speculating that the district court relied on the government’s misstatement. Because the burden is allocated to him in the plain error context, I would conclude that Pileggi failed to establish an error that is plain.
Even assuming there is plain error here, Pileggi clearly has failed to show that the error affected his substantial rights. An error that affects substantial rights is an error that has a prejudicial effect on the outcome, meaning there is “a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.” United States v. Dominguez Benitez, 542 U.S. 74, 82, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (alteration in original) (internal quotation marks omitted). Unlike harmless error analysis, which requires the government to show that the error did not have a prejudicial effect on the outcome, the plain error doctrine places the burden with the defendant to make an affirmative showing of prejudice. See Massenburg, 564 F.3d at 343.
In light of the sentence ultimately imposed, Pileggi simply cannot make such a showing. First, the district court’s sentence, stiff though it may have been, was consistent with the diplomatic assurance given to the government of Costa Rica that Pileggi and his co-conspirators, if convicted, would “not receive a penalty of death or one that requires that they spend the rest of their natural lives in prison.” J.A. 17. Pileggi claims that at his age (he was 48 years old at sentencing), a 600-month sentence is no different than a life sentence. But that is incorrect; a sentence that is effectively a life sentence is still not a life sentence. Pileggi refers to the mortality tables and invites us to do some sort of actuarial analysis to determine if, in fact, he received a life sentence. The problems with such an “effective life sentence” approach are obvious, beginning with the fact that a court would have to make an ad hoc determination regarding whether a substantial prison term should be regarded as a life sentence based on a defendant’s age and health factors.*
*481 Second, and more importantly, Pileggi points to absolutely nothing in the record from which I can conclude that, had the district court been accurately informed about the diplomatic assurances, there is a reasonable probability that the court would have imposed a lesser sentence. Without anything concrete, Pileggi is just speculating. In the plain error review context, it is not the government’s burden to convince the court that, had the accurate information been available, the district court ivould have imposed the same sentence. Rather, it is Pileggi’s burden to establish a reasonable probability that he would have received a more favorable sentence.
Finally, even when there is a plain error that affects substantial rights, the court should exercise its discretion to correct the error only if it “seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,” Olano, 507 U.S. at 732, 113 S.Ct. 1770 (alteration in original) (internal quotation marks omitted), or “in the case of actual innocence of the defendant,” United States v. David, 83 F.3d 638, 647 (4th Cir.1996). Pileggi makes no claim of actual innocence, and these circumstances, in my view, clearly do not undermine the fairness or reputation of our judicial process. Indeed, on at least one previous occasion, we refused even to address a defendant’s argument that his sentence violated the terms of an international extradition treaty to which the United States was party. See United States v. Davis, 954 F.2d 182, 186 (4th Cir.1992). Significantly, we explained that the violation of the relevant terms of extradition “does not rise to the level of fundamentality that this court has traditionally demanded before addressing a question of law not argued at the district court level.” Id. Thus, I would not exercise our discretion to correct such an error.
For the foregoing reasons, I respectfully dissent. Furthermore, I see no reason to reassign this case to another district judge, particularly in light of the fact that the alleged error was one created by the parties’ combined failure to correctly inform the district judge about the diplomatic assurances related to Pileggi’s extradition. In explaining his basis for imposing Pileg-gi’s sentence as the law requires him to do, the district judge revealed no bias or other reason suggesting he is unable or unwilling to impose a proper sentence on remand. I fear a reassignment under these circumstances sends a confusing and troublesome message to the district judges in this circuit.

 I recognize, of course, the equitable appeal of the “effective life sentence" argument. The problem is where to draw the line in a case like this in which it is conceivable that the entire sentence could be served; we should refrain from doing so. Indeed, I am not certain how the district court on remand is to determine whether the sentence is effectively one for life or not. In the end, the solution lies with the executive branches of the parties to a given extradition treaty which could, if so desired, account for the possibility of an "ef *481 fective life sentence” during the extradition process.