In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1644

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERIC WAGNER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 05 CR 50043—**Philip G. Reinhard**, *Judge.*

ARGUED SEPTEMBER 21, 2006—DECIDED NOVEMBER 7, 2006

Before BAUER, CUDAHY, and WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* Eric Wagner was charged with eight counts of selling a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1) and eight counts of distributing marijuana in violation of 21 U.S.C. § 841(a)(1). On October 20, 2005, Wagner pleaded guilty to one count of selling a firearm to a convicted felon and one count of distributing marijuana. The remaining counts were dismissed. The district court sentenced Wagner to 30 months imprisonment. In this appeal, Wagner contends that the district court erred when it found that he had transferred a firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense and increased his offense level by four levels pursuant to United States Sentencing Guideline § 2K2.1(b)(5). We affirm.

## I.  Background

Wagner worked at Wagner Hunting and Fishing Supplies in Freeport, Illinois. Wagner admits that on eight separate occasions he sold firearms to a confidential informant ("CI") who he knew had been convicted of a felony. These transactions occurred between November 23, 2004 and April 22, 2005. In addition to selling the CI nine firearms, Wagner sold marijuana to the CI and Special Agent ("SA") Richardson of the Bureau of Alcohol, Tobacco, Firearms & Explosives.

Wagner and the government entered into a plea agreement, and the parties agreed that (1) the base offense level was 14 pursuant to U.S.S.G. § 2K2.1(a)(6)(b) because the defendant violated 18 U.S.C. § 922(d); (2) the base offense level increased four levels pursuant to U.S.S.G. § 2K2.1(b)(1)(b) because the offense involved between 8 and 24 firearms; and (3) a three-level reduction was applicable pursuant to U.S.S.G. §§ 3E1.1(a) and (b) because the defendant had accepted responsibility and timely expressed his intent to enter a plea of guilty. However, the United States also pursued the application of a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5), claiming that Wagner transferred a firearm with knowledge or reason to believe that it would be used or possessed in connection with another felony offense. Wagner requested a total offense level of 15 and reserved the right to challenge the § 2K2.1(b)(5) enhancement at sentencing.[1]

The district court ordered that a Presentence Investigation Report ("PSR") be prepared prior to Wagner's sentencing hearing. The PSR's calculations were consistent with those contained in the plea agreement. However, the PSR

---

[1] Under the sentencing guidelines, an offense level of 15 corresponds to a sentencing range of 18 to 24 months imprisonment, while an offense level total of 19 corresponds to a sentencing range of 30 to 37 months imprisonment.

concluded that there was insufficient evidence to apply the four-level enhancement pursuant to § 2K2.1(b)(5).

At the sentencing hearing on February 3, 2006, the government called SA Richardson to testify regarding transactions that took place on December 16, 2004, February 23, 2005, and March 9, 2005. During these transactions, the CI purchased firearms from Wagner while wearing a concealed recording device. The government also introduced partial recordings and transcripts from these transactions. The transcript of the December 16, 2004 firearm transaction indicates that the CI said to Wagner, "I file the numbers off when I get rid of 'em." SA Richardson testified that Wagner then nodded his head in agreement. On this same day, the CI told Wagner that he "made eighty bucks from that last one." Wagner responded by asking the CI, "What are ya doin'? Sellin' 'em on the street?"

The transcripts from February 23, 2005 indicate that the CI had told Wagner that he knew a drug dealer in Rockford who wanted "a couple of nines just to watch his shit" and that the drug dealer was going to give the CI "an ounce of coke for it." SA Richardson testified that he had observed Wagner nodding his head in agreement when the CI told Wagner that he was going to exchange the gun for an ounce of cocaine. The March 9, 2005 transcript indicates that the CI told Wagner that a drug dealer asked him, "can you get me another [gun with laser] . . . I got another boy selling some shit who would sure like to have one, too." On each of these occasions, Wagner sold the CI a firearm after the CI made the statements.

At the sentencing hearing, SA Richardson testified that the CI and Wagner knew each other prior to the investigation and that the government had been concerned with an entrapment defense. SA Richardson testified that he had instructed the CI to tell Wagner that he was filing the serial numbers off of the firearms and trading the

firearms for narcotics with drug dealers. These statements were intended "to show that the firearms weren't going to be just for him, to show that the CI was reselling the firearms to other individuals, to show that it wasn't just a friend doing a friend a favor to buy a gun." SA Richardson also testified that he had instructed the CI to make these statements to avoid raising Wagner's suspicion as to why the CI was purchasing multiple similar handguns.

SA Richardson also testified that when he first spoke with the CI, the CI had informed him that he had purchased firearms previously from both Wagner and Wagner's father. SA Richardson asserted that in addition to avoiding an entrapment defense, the government continued to purchase firearms to determine if Wagner's father, the owner and licensee of the store, was involved in the sale of firearms to prohibited persons. SA Richardson also acknowledged that he knew of the sentencing enhancements for selling eight or more firearms to a convicted felon and for transferring a firearm with reason to believe that it would be used in another felony offense. SA Richardson testified that when he conducts an investigation, especially of individuals working out of a federal firearms business, in addition to obtaining sufficient evidence to convict, his motive is to secure the highest possible sentence.

After SA Richardson finished testifying, Wagner called the CI as a witness. The CI testified that it was his understanding that SA Richardson had instructed him to make the statements to increase Wagner's sentence. The CI believed that Wagner had heard or understood him when he made the different statements but did not seem to care what the CI did with the guns. The CI testified that Wagner's primary concern was to complete each transaction by filling out the necessary paperwork, collecting the money, and giving him the gun.

After hearing the recordings, reading the transcripts, and listening to the testimony from SA Richardson and the CI,

the district court held that there was sufficient evidence to apply a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5). The district court also found that the conduct of the government was not sentencing manipulation. But the district court judge cautioned "If I felt— and I want to emphasize this to the law enforcement—if I felt that there was sentencing enhancement investigations on a regular basis, I would not allow it. Not in my court." The district court calculated the total offense level to be 19 and sentenced Wagner to 30 months imprisonment, followed by 30 months of supervised release. The court also ordered Wagner to pay a special assessment of $200 and a fine of $25,000. This timely appeal followed.

## II. Discussion

Wagner contends that the district court erred in applying the U.S.S.G. § 2K2.1(b)(5) enhancement for two reasons: (1) the evidence at sentencing was insufficient to establish that he transferred a firearm with knowledge, intent, or reason to believe that the firearm would be used or possessed in connection with another felony offense; and (2) the government engaged in sentence manipulation by programming the CI to make certain statements while purchasing firearms from the defendant in an effort to enhance his sentence.

### A. Wagner's Knowledge of the Intended Use for the Firearms

We review the district court's application of sentencing guidelines *de novo*, but where the district court bases the application of a sentencing guideline on factual findings, we review for clear error. *United States v. Messino*, 55 F.3d 1241, 1247 (7th Cir. 1995). A factual determination is clearly erroneous only if, after considering all of the

evidence, the reviewing court is left with the firm conviction that a mistake has been made. *Id.* Where there are two permissible inferences from the evidence, the district court's choice between them cannot be clearly erroneous. *United States v. Wyatt*, 102 F.3d 241, 246 (7th Cir. 1996).

Sentencing Guideline § 2K2.1(b)(5) provides, in pertinent part: "If the defendant . . . transferred any firearm . . . with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase [the offense level] by 4 levels." Whether a defendant had reason to believe a firearm would be used or possessed in connection with another felony is a factual determination reviewed for clear error. *United States v. Inglese*, 282 F.3d 528, 539 (7th Cir. 2002). Where the defendant protests the application of § 2K2.1(b)(5), the government bears the burden of proving by a preponderance of the evidence that the enhancement is applicable. *United States v. Fourtis*, 966 F.2d 1158, 1160 (7th Cir. 1992).

Wagner first argues that the evidence does not establish that he heard, understood, or believed the unsolicited statements made by the CI, and therefore, he did not have the knowledge, intent, or reason to believe that the firearms would be used or possessed in connection with another felony offense. Wagner contends that: (1) the background noise in the store made it difficult for Wagner to hear or understand the CI's statements; (2) SA Richardson was not always present or standing next to the CI during the conversations and therefore cannot accurately testify as to what Wagner heard or understood; and (3) Wagner did not believe the CI was someone who would remove serial numbers or frequent drug houses. Additionally, Wagner argues that because he never altered his behavior in selling the firearms after the CI made the statements to him, he did not hear, understand or believe the statements made by

the CI.[2]

The district court based its factual findings on the testimony of SA Richardson and the CI, together with the transcripts of tape recorded conversations presented at the sentencing hearing. The district court found by a preponderance of the evidence that Wagner heard the CI tell him that (1) he was filing the serial numbers off of the guns, (2) he was obtaining the guns for a drug dealer operating crack houses in exchange for cocaine, and (3) the drug dealer knew another individual selling drugs that also wanted a gun with a laser. Based upon the evidence presented at sentencing, it was not clearly erroneous for the district court to find that Wagner heard the statements made by the CI.

Wagner argues that even had he heard the statements made by the CI, he had no reason to believe that the CI was telling the truth. However, we agree with the district court that the inquiry made by Wagner on December 16, 2004 about selling the guns on the street, taken in context with his other conversations with the CI, indicates that Wagner did have reason to believe that the serial numbers were being removed and that the firearms were being resold by the CI to drug dealers. Because the district court's factual determinations are supported by the record and not clearly erroneous, we affirm the district court's application of the four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(5).

---

[2] For example, on February 23, 2005, the CI told Wagner that the drug dealer needed a couple of nine millimeter guns. Instead of acknowledging the CI's statement and selling him a nine millimeter handgun, Wagner sold the CI a .380 caliber handgun.

**B.  Sentence Manipulation**

A claim of sentencing manipulation "is distinct from a claim of sentencing entrapment[,] which occurs when the government causes a defendant initially predisposed to commit a lesser crime to commit a more serious offense." *United States v. Garcia*, 79 F.3d 74, 75 (7th Cir. 1996). "The doctrine of sentencing manipulation states that a judge cannot use evidence to enhance a defendant's sentence if the government procured the evidence through outrageous conduct solely for the purpose of increasing the defendant's sentence under the Sentencing Guidelines." *United States v. Messino*, 55 F.3d at 1256. However, there is no defense of sentencing manipulation in this circuit. *Garcia*, 79 F.3d at 76. It is within the discretion of law enforcement to decide whether delaying the arrest of the suspect will help ensnare co-conspirators, give the law enforcement greater understanding of the nature of the criminal enterprise, or allow the suspect enough "rope to hang himself." *Id*.

Wagner argues that the government engaged in sentencing manipulation by programming the CI to make certain statements that Wagner had no reason to believe and had no effect on his actions. We disagree. Although SA Richardson admitted that the government's decisions to prolong the investigation and direct the CI to make certain statements to Wagner were motivated in part by the desire to increase his sentence, this was not the government's sole purpose. The record is clear that the government was investigating the sale of guns to prohibited persons. We agree with the district court that the government had the right to fully investigate whether others in the store were involved and the extent of Wagner's criminal activity, including whether he was selling the firearms with reason to believe that the guns would be used or possessed in connection with another felony or whether he continued to sell the firearms out of friendship.

Wagner had the opportunity to refuse to sell the CI firearms but failed to do so. Similar to the *Garcia* case, the

government is not the cause of the predicament in which Wagner finds himself; he is.

### III.  Conclusion

Accordingly, the sentence of the district court is AFFIRMED.

A true Copy:

       Teste:

                       _____
                       *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*