# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 06-4101, 06-4376 & 07-1813

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARMEAN KNOX, ANTHONY KNOX,
AND REGINALD DAVIS,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04-CR-818—**Amy J. St. Eve**, *Judge.*

ARGUED SEPTEMBER 18, 2008—DECIDED JULY 20, 2009

Before EASTERBROOK, *Chief Judge,* and SYKES and
TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Defendants Reginald Davis,
Anthony Knox, and Armean Knox[1] made a deal to buy
fourteen semi-automatic handguns for the bargain price

---

[1] For clarity, we will refer to the Knox defendants as "An-
thony" and "Armean."

of 2 1/4 ounces of crack cocaine. As their unfortunate luck would have it, the seller was an undercover agent. After being arrested on various drugs and weapons charges, each defendant pleaded guilty to conspiracy to distribute more than 50 grams of crack. On appeal, the defendants raise several challenges to the reasonableness of their sentences, including that *Kimbrough v. United States*, 128 S. Ct. 558 (2007), entitles them to resentencing.

## I. Background

### A. Facts

On three separate occasions between June and September 2004, Davis sold between one-quarter and one-half ounces of crack cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). During each of these meetings, Davis expressed an interest in purchasing handguns from the agent. At the third meeting, Davis introduced the agent to Anthony, and the two defendants negotiated a deal to pay $2000 cash for one .45-caliber and thirteen .38-caliber guns. Armean also met the agent at this meeting when he delivered the crack for purchase.

On September 9, 2004, Davis and Armean met with the agent again to discuss the guns purchase, and the agent suggested that the defendants pay for the guns with 2 1/4 ounces of crack instead of $2000 cash. Davis and Armean readily agreed to this payment term, since, according to the defendants, that quantity of crack was

worth only about $1000 to $1400. Davis indicated that he could easily supply the requested 2 1/4 ounces, telling the agent that "if you want two and a split that's nothing." During this meeting, Davis called Anthony, who also agreed to the change in payment.

On September 16, 2004, Anthony and Armean delivered 61.5 grams[2] of crack to the agent in exchange for the fourteen guns. ATF agents arrested Anthony and Armean on site immediately after they received the guns, and Davis was later arrested in December 2004.

The government obtained an indictment charging Davis, Anthony, and Armean with one count of conspiracy to possess with intent to distribute and to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 846, and several counts of intentionally distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Additionally, the indictment charged Anthony and Armean each with one count of being felons in possession of firearms, in violation of 18 U.S.C. § 922(g)(1). The indictment also charged Davis with conspiring with another individual to possess with intent to distribute and to distribute more than five grams of crack cocaine, but the government later dismissed the charges against that individual. The defendants pleaded guilty without plea agreements. Each defendant pleaded guilty to the conspiracy to distribute more than 50 grams of crack cocaine, and Anthony and Armean pleaded guilty to the firearms possession counts. The government subse-

---

[2]  61.5 grams equals 2.17 ounces.

quently dismissed all of the distribution counts against the defendants and the other conspiracy count against Davis.

## B.  Sentencing Proceedings

The defendants were sentenced between December 2006 and March 2007. Under the Sentencing Guidelines, Davis qualified as a career offender based on three of his prior felony drug convictions, *see* U.S.S.G. § 4B1.1(a), resulting in a criminal history category of VI and an offense level of 37, *see id.* § 4B1.1(b)(A) (applying an offense level of 37 for offenses with statutory maximums of life imprisonment); 21 U.S.C. § 841(b)(1)(A)(iii) (imposing a maximum sentence of life imprisonment for drug offenses involving 50 grams or more of crack). After a three-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, Davis' total offense level was 34, yielding an advisory guidelines sentencing range of 262-327 months. This sentencing range was higher than what Davis would have received had he been sentenced as a non-career offender under the drug-offense guideline, § 2D1.1; although Davis' criminal history category was VI even before the application of § 4B1.1, his offense level was higher under § 4B1.1.

At his sentencing hearing, Davis asked for a below-guidelines sentence based on the Guidelines' 100:1 disparity between sentences for crack- and powder-cocaine

offenses,[3] the ATF agent's use of sentencing entrapment and manipulation, and Davis' cooperation with the government. Davis also presented substantial evidence of his unstable childhood and his family's history of substance abuse, as well as expert testimony of Davis' mental illness.

The district court dismissed Davis' argument based on the severity of the crack/powder disparity, citing then-binding circuit precedent precluding the court from relying on that disparity as a basis for imposing a sentence below the guidelines range. *See United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006), *abrogated by Kimbrough v. United States*, 128 S. Ct. 558 (2007). The court also rejected Davis' claims of sentencing entrapment, sentencing manipulation, and cooperation with the government. The court did, however, give substantial credit to Davis' evidence of his difficult childhood and history of mental illness. Concluding that these factors made it reasonable to deviate from the Guidelines, the court gave Davis a below-guidelines sentence of 220 months.

---

[3] Under the drug-offense guideline applicable at the time of the defendants' sentencing hearings, an offense involving a given quantity of crack triggered the same sentencing range as an offense involving 100 times that quantity of powder cocaine. *See* U.S. Sentencing Comm'n, Guidelines Manual § 2D1.1(c)(4) (2005) (applying equal base offense levels to drug offenses involving 50 grams of crack and 5 kg of powder cocaine). The Sentencing Commission has since amended the drug-offense guideline to reduce this crack/powder disparity. *See* U.S.S.G. app. C, amend. 706 (Supp. 2007), *available at* http://www.ussc.gov/2007guid/appc2007.pdf.

Anthony, like Davis, qualified as a career offender under § 4B1.1, resulting in a criminal history category of VI and an offense level of 37. After a three-level reduction under § 3E1.1 for acceptance of responsibility, Anthony's total offense level was 34, yielding an advisory guidelines sentencing range of 262-327 months. As in Davis' case, this sentencing range was higher than what Anthony would have received under § 2D1.1 as a non-career offender; although Anthony's criminal history category was VI even before the application of § 4B1.1, his offense level was higher under § 4B1.1.

At the sentencing hearing, Anthony argued for a below-guidelines sentence based on the severity of the Guidelines' 100:1 crack/powder disparity and the ATF agent's use of sentencing manipulation. The district court did not accept these arguments and imposed a minimum-guidelines sentence of 262 months.

Armean, unlike his co-defendants, did not qualify as a career offender; his sentence for the drug offense was determined by § 2D1.1. Because the guns purchase involved a quantity of crack between 50 and 150 grams, Armean's base offense level was 32.[4] After a two-level enhancement for the possession of a dangerous weapon,

---

[4] A base offense level of 32 resulted from the district court's correct application of the drug quantity table of § 2D1.1 that predated the Sentencing Commission's 2007 amendment of that guideline. Under the current version of § 2D1.1, a crack quantity between 50 and 150 grams corresponds to a base offense level of only 30. *See* U.S.S.G. § 2D1.1(a)(3), (c)(5).

*see* U.S.S.G. § 2D1.1(b)(1), and a three-level reduction for acceptance of responsibility under § 3E1.1, Armean's total offense level was 31. His criminal history category was IV, yielding an advisory guidelines sentencing range of 151-188 months. The district court imposed a guidelines sentence of 165 months.

### C. Arguments on Appeal

On appeal, all three defendants argue that the district court should have considered the Guidelines' crack/powder disparity as a basis for reducing their sentences. They claim that the Supreme Court's decision in *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), which held that the disparity is advisory and therefore within a district court's discretion to consider, entitles them to resentencing. Davis and Anthony also argue that the district court failed to sufficiently address their sentencing entrapment and manipulation claims. Finally, Davis raises several additional challenges to the reasonableness of his sentence, which we describe in greater detail below.

### II. Analysis

We review the district court's sentencing decisions for an abuse of discretion. *Gall v. United States*, 128 S. Ct. 586, 597 (2007); *United States v. Clanton*, 538 F.3d 652, 659 (7th Cir. 2008). After ensuring that the district court committed no procedural error such as failing to properly calculate the guidelines range or consider the

sentencing factors of 18 U.S.C. § 3553(a), we examine the substantive reasonableness of the sentence. *Gall*, 128 S. Ct. at 597; *Clanton*, 538 F.3d at 659. In determining whether a guidelines sentence is reasonable, the district court should consider all of the § 3553(a) factors and "make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597.

### A.  The Impact of *Kimbrough* and the Crack/Powder Disparity on Career Offenders

### 1.  The Effect of *Kimbrough* on Davis' and Anthony's Sentences

After the defendants in this case were sentenced, the Supreme Court held in *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), that district courts may consider the crack/powder disparity embedded in the drug-offense guideline, § 2D1.1, as a basis for choosing a below-guidelines sentence. The Court explained that a district court may generally consider policy disagreements with the advisory Guidelines, provided that the court does not disregard statutes such as mandatory minimums and maximums. *See id.* at 570-71. Since the Guidelines' crack/powder disparity does not result from a congressional mandate, *see id.* at 571-72, "it would not be an abuse of discretion for a district court to conclude" that the disparity "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes . . . ." *Id.* at 575.

Before *Kimbrough*, our circuit precedent prevented district courts from considering the crack/powder

disparity as a basis for choosing a below-guidelines sentence. *See United States v. Miller*, 450 F.3d 270, 274-75 (7th Cir. 2006). To correct the prejudicial effects of *Miller*, we have established remand procedures for crack offenders sentenced prior to *Kimbrough.* Offenders who did not raise a challenge to the crack/powder disparity at sentencing are entitled to a limited remand, allowing the district court to indicate whether it would have selected a different sentence had it known of its discretion under *Kimbrough. United States v. Taylor*, 520 F.3d 746, 747-49 (7th Cir. 2008). Offenders who did challenge the disparity at sentencing are entitled to a full remand and resentencing. *Clanton*, 538 F.3d at 659.

We have previously granted these remands only to offenders sentenced under the drug-offense guideline, § 2D1.1, as opposed to the career offender guideline, § 4B1.1. *See id.* at 659-60. Although career offenders are subject to a 100:1 crack/powder sentencing disparity, that disparity does not originate in the advisory drug-offense guideline at issue in *Kimbrough.* Instead, it is the operation of mandatory statutes that subjects career offenders to the policy of harsher sentences for crack-cocaine offenses. Congress has directed that career offenders convicted of offenses "described in" certain, enumerated statutes, including 21 U.S.C. § 841, be sentenced "at or near the maximum term authorized" for the offense. 28 U.S.C. § 994(h)(1)(B). To implement this directive, the career offender guideline prescribes base offense levels that track the statutory maximums of the offense of conviction. U.S.S.G. § 4B1.1(b). For convictions of drug offenses under 21 U.S.C. § 841, the

applicable statutory maximums treat a given quantity of crack cocaine the same as 100 times that quantity of powder cocaine for sentencing purposes. *See* 21 U.S.C. § 841(b)(1)(A)(ii)-(iii) (imposing a maximum sentence of life imprisonment for drug offenses involving both 50 grams of crack and 5 kg of powder cocaine). It is this statutory penalty provision, incorporated into the Guidelines pursuant to another statute, 28 U.S.C. § 994(h), wherein the 100:1 crack/powder disparity affecting career offenders lies.

Relying on the statutory origin of the crack/powder disparity embedded in § 4B1.1, we held in *United States v. Harris*, 536 F.3d 798, 813 (7th Cir. 2008), that *Kimbrough* had no effect on a career offender's sentence. We reasoned that, although a sentencing disparity might occur under § 4B1.1 based on the type of cocaine involved, that disparity "is the product of a discrepancy created by *statute*." *Id.* at 812-13. "While the sentencing guidelines may be only advisory for district judges, congressional legislation is not." *Id.* at 813; *see also United States v. Millbrook*, 553 F.3d 1057, 1067 (7th Cir. 2009) ("*Kimbrough*'s discussion of a district court's discretion to take into account the crack/powder disparity is of no consequence to a defendant sentenced under § 4B1.1 as a career offender."); *Clanton*, 538 F.3d at 660 ("[A] sentence entered under the career offender guideline, § 4B.1.1, raises no *Kimbrough* problem . . . ." (quoting *Harris*, 536 F.3d at 813)).

Given our holding in *Harris*, it may seem that Davis and Anthony, both career offenders sentenced under

§ 4B1.1, are not entitled to resentencing in light of *Kimbrough*. However, these defendants cite *United States v. Liddell*, 543 F.3d 877 (7th Cir. 2008), in support of their argument that a district court may rely on the crack/powder disparity as a basis for imposing a sentence below the career offender guidelines range. After being sentenced as a career offender, Liddell argued on appeal that the district court should have considered the severity of the crack/powder disparity. *Id.* at 880, 882. Citing *Harris*, the court first noted that Liddell's argument was problematic because the only crack/powder disparity that affected his sentence under § 4B1.1 was the product of a statute. *Id.* at 882-83. Nonetheless, the court then recognized what it called the defendant's "more nuanced" argument of whether a district court "can consider the disparity as a reason for issuing a below-guideline sentence." *Id.* at 883. This contention was ultimately rejected because Liddell did not raise it below, and any error by the district court in failing to consider his *Kimbrough* challenge was not plain. *Id.* at 883, 885; *see also United States v. Hearn*, 549 F.3d 680, 684 (7th Cir. 2008) (rejecting the defendant's "more nuanced argument based on *Kimbrough*" under a plain-error standard of review (quoting *Liddell*, 543 F.3d at 883)).

*Liddell* is difficult to reconcile with *Harris*, but it is not necessary to resolve the tension between these cases today because Davis and Anthony are entitled to resentencing for a reason not present in either case. Unlike the defendants in *Harris* and *Liddell*, the defendants in this case pleaded guilty to conspiracy under 21 U.S.C. § 846 but not to the substantive offense under 21 U.S.C.

§ 841. *See Harris*, 536 F.3d at 802 (conviction of distributing crack cocaine under § 841(a)); *Liddell*, 543 F.3d at 879 (guilty plea to possession with intent to distribute under § 841(a)). It is true that drug distribution or possession with the intent to distribute was the object of the Knox and Davis conspiracy, but that is of no consequence here. As mentioned above, the congressional directive that career offenders be sentenced "at or near" the statutory maximum applies only to certain, enumerated offenses of conviction. 28 U.S.C. § 994(h). Although substantive distribution offenses under § 841 are among the listed offenses, conspiracy offenses under § 846 are not. *Id.* § 994(h)(1)(B). Moreover, the precision with which § 994(h) includes certain drug offenses but excludes others indicates that the omission of § 846 was no oversight.

Section 994(h)(1)(B) provides a narrow list of drug offenses that require the "at or near the maximum" career offender treatment, including distribution under § 841, importation of certain controlled substances under 21 U.S.C. § 952(a), and manufacturing and distributing on board vessels under 46 U.S.C. § 70503. The statute also omits several significant drug offenses, including the use of a communication facility to facilitate a drug offense under 21 U.S.C. § 843(b) and simple possession under 21 U.S.C. § 844. Perhaps the best example of the statute's precision is the inclusion of only those importation offenses involving the most harmful drugs. Section 994(h) includes 21 U.S.C. § 952(a), which prohibits the importation of schedule I and II controlled substances and narcotic drugs under schedules III, IV, and V, but

carefully excludes 21 U.S.C. § 952(b), which prohibits the importation of nonnarcotic schedule III, IV, and V substances.

Also telling is § 994(h)'s inclusion of a conspiracy offense other than § 846. The statute incorporates all maritime drug offenses "described in . . . chapter 705 of title 46." 28 U.S.C. § 994(h)(1)(B). That chapter includes, among other things, a penalty provision for "attempts and conspiracies" to manufacture controlled substances on board vessels. 46 U.S.C. § 70506(b). If Congress wanted to include the Controlled Substances Act's analogous § 846 conspiracy provision, it knew how to do so. And simply reading § 846 offenses into § 994(h) would undermine Congress's intent to exclude certain drug offenses from the statute's reach. Since § 846 prohibits any attempt or conspiracy "to commit any offense defined in this subchapter," incorporating § 846 into § 994(h) would include through the back door as the object of a conspiracy substantive drug offenses, such as simple possession of a controlled substance in violation of 21 U.S.C. § 844, that Congress specifically omitted from the "at or near the maximum" directive.

Based on the deliberate manner in which § 994(h) includes specific drug offenses but excludes others, Congress did not intend to include § 846 offenses among those requiring sentences "at or near" the statutory maximum. Because § 846 is not included in this statutory mandate, § 994(h) does not limit a district court's discretion under *Kimbrough* to consider the crack/powder disparity affecting a career offender convicted under § 846.

True, the career offender guideline itself draws no distinction between § 841 and § 846 offenses for sentencing purposes. U.S.S.G. § 4B1.2 cmt. n.1 (defining the drug offenses qualifying for career-offender treatment to include "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses"). Relying on its "general guideline promulgation authority under 28 U.S.C. § 994(a)-(f)," the Sentencing Commission has gone beyond the specific offenses listed in § 994(h) and included § 846 conspiracy offenses in § 4B1.1. U.S.S.G. § 4B1.1 cmt. bkgd. Courts have repeatedly recognized that this exercise of the Commission's authority under § 994 was valid. *E.g., United States v. Damerville,* 27 F.3d 254, 257 (7th Cir. 1994); *United States v. Mendoza-Figueroa*, 65 F.3d 691, 693-94 (8th Cir. 1995) (en banc). Indeed, the Senate Report to § 994(h) provides that the statute is "not necessarily intended to be an exhaustive list of types of cases in which . . . terms at or close to authorized maxima should be specified." S. Rep. No. 98-225, at 176 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3359; *see also Mendoza-Figueroa*, 65 F.3d at 694 (relying on legislative history to conclude that § 994(h) "is ample authority to include drug conspiracies as qualifying offenses"). Moreover, since the statutory penalties for conspiracy offenses under § 846 and substantive offenses under § 841 are the same, the Commission had good reason to go beyond the specific mandate of § 994(h) and include conspiracy offenses in the career offender guideline. *Damerville*, 27 F.3d at 257; *United States v. Jackson*, 60 F.3d 128, 133 (2d Cir. 1995).

Still, although the Commission had the authority to include drug conspiracy offenses under § 846 in the

career offender guideline, nothing in the text of § 994(h) requires the Commission to do so. *See Damerville*, 27 F.3d at 257 ("Section 994(h) provides the minimum obligation of the Commission and does not prohibit the inclusion of additional offenses that qualify for such treatment."); *United States v. Piper*, 35 F.3d 611, 618 (1st Cir. 1994) (explaining that only those offenses listed in § 994(h) comprise "the irreducible minimum that the Commission must do by way of a career offender guideline"); *United States v. Heim*, 15 F.3d 830, 832 (9th Cir. 1994) ("The Commission's decision to go *beyond* the mandate of § 994(h) is . . . consistent with the legislative history to § 994(h)." (emphasis added)). So the Commission's decision to include conspiracy offenses in the career offender guideline—and thereby subject § 846 offenders to the crack/powder disparity contained in the statutory maximums—reflects an exercise of discretion. *See United States v. Allen*, 24 F.3d 1180, 1186 (10th Cir. 1994) ("Section 994(h) does not, by mandating enhancement for certain crimes, preclude the Commission from enhancing others if it is within the Commission's grant of discretion to do so."). Such policy decisions made by the Commission in developing the Guidelines are not binding on sentencing courts. *See Kimbrough*, 128 S. Ct. at 570-71 (observing that no congressional act prevented sentencing courts from disagreeing with the crack/powder disparity embedded in § 2D1.1); *United States v. Spears*, 129 S. Ct. 840, 843 (2009) (per curiam) (*Kimbrough* recognized "district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them . . . .").

Since no congressional statute requires that a career offender convicted of a conspiracy offense under 21 U.S.C.

§ 846 be sentenced "at or near" the statutory maximum, sentencing courts have the discretion under *Kimbrough* to consider the crack/powder disparity affecting such an offender's sentence. It follows that Davis and Anthony, who both pleaded guilty to conspiracy under § 846 but not to the substantive drug offense under § 841, are entitled to a remand for resentencing in light of *Kimbrough*.

## 2. The Effect of the 2007 Amendment Reducing the Guidelines' Crack/Powder Disparity on Davis' and Anthony's Sentences

Related to their *Kimbrough* argument, Davis and Anthony argue that they are entitled to resentencing under the Commission's 2007 amendment to § 2D1.1, which reduced the sentencing disparity between crack- and powder-cocaine offenses. U.S.S.G. app. C, amend. 706 (Supp. 2007). We can easily dispense with this argument. The Commission's policy is that a defendant already serving a sentence may not benefit from a guidelines amendment unless it "ha[s] the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). Since Davis' and Anthony's sentences were determined by § 4B1.1, the 2007 amendment to § 2D1.1 does not lower their applicable guidelines ranges. *See United States v. Forman*, 553 F.3d 585, 589 (7th Cir. 2009) (per curiam) ("Amendment 706 provides no benefit to career offenders."); *Clay*, 524 F.3d at 878-79 ("Although the recent amendments to the sentencing guidelines lowered the offense levels associated with

crack in the drug quantity table in U.S.S.G. § 2D1.1, they did not change the career offender provision in § 4B1.1 . . . .”). Further, the Commission's policy on this point is not one that we can simply ignore, since Congress has declared that any sentence reductions based on a guidelines amendment must be “consistent with applicable policy statements issued by the Sentencing Commission.” 18 U.S.C. § 3582(c)(2); *see also United States v. Lawrence*, 535 F.3d 631, 637 (7th Cir. 2008) (recognizing that a district court's authority to reduce sentences under § 3582(c)(2) is limited by the Commission's policy statements*).

### 3.  The Effect of *Kimbrough* and the 2007 Amendment on Armean's Sentence

Unlike his co-defendants, Armean did not qualify as a career offender. Since his sentence was determined by § 2D1.1, Armean should be an obvious candidate for resentencing in light of *Kimbrough*. However, Armean failed to challenge the crack/powder disparity embedded in § 2D1.1 both at his sentencing hearing and in his appellate brief. The latter omission would generally mean that Armean has waived any benefit from *Kimbrough*, since “[a] party waives any argument that . . . it fails to develop on appeal.” *Local 15, Int'l Broth. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 783 (7th Cir. 2007) (quotation and citation omitted)). Fortunately for Armean, the government has conceded that Armean is entitled to a *Taylor* limited remand in light of *Kimbrough*, thereby “waiving waiver” of Armean's *Kimbrough* claim.

*See, e.g.*, *United States v. Pacheco-Diaz*, 506 F.3d 545, 551 (7th Cir. 2007). We will accordingly grant Armean a limited remand at which the district court should indicate whether it would have sentenced Armean differently had it known of its discretion under *Kimbrough*. *See Taylor*, 520 F.3d at 748-49.

Although failing to brief his *Kimbrough* claim, Armean has argued on appeal that he is entitled to a sentence reduction under the 2007 amendment to § 2D1.1. That may be true, but this appeal is not the proper vehicle for Armean to raise this claim in the first instance; rather, Armean should move for a reduced sentence in the district court under 18 U.S.C. § 3582(c)(2). Armean will have the opportunity to make this motion at his limited remand, at which the district court should first decide "whether to act favorably on [Armean's] motion (if he makes one, or on the judge's own initiative, if [Armean] does not) for relief under the Commission's new crack regime." *Taylor*, 520 F.3d at 748. After resolving any § 3582 motion, the court should indicate whether it is inclined to reduce Armean's sentence even further in light of *Kimbrough*. *Id.* at 749.

### B. Sentencing Arguments Resolved—Davis

Although we conclude that Davis and Anthony are entitled to a full remand and resentencing in light of *Kimbrough*, we have also considered their sentencing arguments that are unrelated to the crack/powder disparity. Because some of these arguments are meritless

and were fully developed in the initial sentencing proceedings, we may dispense with them in this appeal.

Beginning with Davis' individual arguments, he asserts that other errors were committed at his sentencing. He argues that the district court abused its discretion by failing to adequately consider evidence that the ATF agent engaged in sentencing entrapment and manipulation. Davis also asserts that the court's application of the career offender guideline to his case was unreasonable based on the minor nature of his prior felony convictions and the unreliability of the court's findings of Davis' prior convictions. Finally, Davis challenges the district court's refusal to reduce his sentence based on his cooperation with the government.

### 1. Sentencing Entrapment and Manipulation

Sentencing entrapment occurs "when a defendant who lacks a predisposition to engage in more serious crimes nevertheless does so 'as a result of unrelenting government persistence.'" *United States v. White*, 519 F.3d 342, 347 (7th Cir. 2008) (quoting *United States v. Veazey*, 491 F.3d 700, 710 (7th Cir. 2007)). The government may disprove sentencing entrapment by simply showing that the defendant was in fact predisposed to violate the law without "extraordinary inducements." *Id.*

Sentencing manipulation is distinct from entrapment and occurs when the government procures evidence "through outrageous conduct solely for the purpose of increasing the defendant's sentence under the Sentencing

Guidelines." *United States v. Wagner*, 467 F.3d 1085, 1090
(7th Cir. 2006). Because "this circuit clearly and consis-
tently has refused to recognize any defense based on
either 'sentencing manipulation' or on asserting 'outra-
geous government conduct,'" *White*, 519 F.3d at 346,
Davis' manipulation argument would seem to be a
nonstarter. However, Davis raises both sentencing entrap-
ment and manipulation not as defenses to criminal con-
duct, but as mitigating factors that the district court may
consider in choosing a reasonable sentence. *See United
States v. Lakhani*, 480 F.3d 171, 186 (3d Cir. 2007) (acknowl-
edging that the district court at sentencing "would have
been entitled to consider the Government's pervasive
role in this case," even though the jury had rejected the
defendant's entrapment defense); *cf. United States v. Hale*,
448 F.3d 971, 989 (7th Cir. 2006) (rejecting a sentencing
entrapment argument under § 3553(a) on the ground that
the defendant had not shown "extraordinary induce-
ments"). Assuming that evidence of sentencing entrap-
ment and manipulation could be relevant to a district
court's application of the § 3553(a) factors, the evidence
in this case was not so strong that the district court
abused its discretion in rejecting Davis' entrapment and
manipulation arguments.

Davis argues that, by changing the payment term of the
guns purchase from $2000 cash to 2 1/4 ounces cocaine, the
ATF agent entrapped Davis into a drug offense that he
would not otherwise have committed. That change also
amounts to sentencing manipulation, says Davis, because
the drug offense triggered a harsher sentencing range
under the career offender guideline, which would not

apply to a cash purchase of guns. *See* U.S.S.G. § 4B1.1(a)(2) (indicating that the career offender guideline applies only where "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense").

We find these arguments to be without merit. As to sentencing entrapment, Davis had sold crack to the agent on three prior occasions, indicating that he did not lack the predisposition to commit another crack deal. True, the prior sales involved quantities below the 50-gram threshold that triggered a higher statutory maximum for Davis' instant conviction. *See* 21 U.S.C. § 841(b)(1)(a)(iii). But Davis was at all times agreeable to paying for the guns with 2 1/4 ounces of crack, telling his co-defendants that he could easily supply that quantity. The agent did not have to use "extraordinary inducements" to convince Davis to engage in this relatively high-volume crack deal. *White*, 519 F.3d at 347. And while the 2 1/4 ounces solicited by the agent may have had a slightly lesser value than the originally proposed $2000 cash, such "bargain basement pricing" does not amount to sentencing entrapment. *United States v. Estrada*, 256 F.3d 466, 473-74 (7th Cir. 2001).

As to sentencing manipulation, it is not enough that the agent's provision of handguns and solicitation of larger crack quantities may have been "motivated in part by the desire to increase [Davis'] sentence." *Wagner*, 467 F.3d at 1090. Although the agent's tactics had the effect of increasing Davis' guidelines sentencing range, it also served the legitimate purpose of investigating the full

extent of Davis' criminal activity, including his ability to deal in large quantities of crack. *See id*. The government's conduct in this case was not so outrageous as to require leniency under § 3553(a).

### 2.  Application of the Career Offender Guideline

Davis challenges the reasonableness of the district court's application of the career offender guideline. In particular, Davis contends that sentencing him under § 4B1.1 is unreasonable because two of the three prior drug felonies that qualified him as a career offender occurred at a young age, involved relatively small amounts of drugs, and resulted in relatively short periods of incarceration. The problem for Davis, however, is that the district court fully considered these factors when examining Davis' "extensive criminal history." The court simply discounted the relative brevity of Davis' prior sentences against the fact that "the sentences that you have served certainly have not been a deterrent to your conduct." There was no abuse of discretion here.

Davis also challenges the district court's conclusion that he qualified as a career offender based on prior convictions that were not proven beyond a reasonable doubt. He argues that due process requires that sentencing enhancements be based on only reliable facts, and that prior convictions established by a mere preponderance of the evidence are unreliable. However, rather than developing a cogent due process claim, Davis' brief blends his argument for a reasonable doubt standard with a discussion of the Sixth Amendment right to a

jury trial. We have repeatedly held that the Sixth Amendment does not require that prior convictions supporting a career offender classification be found by a jury beyond a reasonable doubt. *See Clanton*, 538 F.3d at 654 (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)); *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007). We do not see how Davis' argument, though couched in terms of due process and the reasonableness of his sentence, survives this precedent.

### 3. Cooperation with the Government

In his final challenge to the reasonableness of his sentence, Davis argues that the district court abused its discretion by failing to consider his cooperation with the government. Prior to pleading in this case, Davis discussed a plea agreement where, in exchange for disclosing the details of the crime and serving as a witness, the government would move for a reduced sentence based on Davis' "substantial assistance." *See* U.S.S.G. § 5K1.1. The deal fell through, however, based on Davis' desire to make other mitigation arguments at sentencing and his failure to admit all of the details of the offense, particularly that it involved crack cocaine. As a result, the government declined to make a § 5K1.1 motion at Davis' sentencing.

We agree with Davis that, as a general matter, a district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a § 5K1.1 motion. *See United*

*States v. Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006) (reasoning that a district court should consider "the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1"); *United States v. Doe*, 398 F.3d 1254, 1260-61 (10th Cir. 2005) (concluding that "a defendant's assistance should be fully considered by a district court at sentencing even if that assistance is not presented to the court in the form of a § 5K1.1 motion"); *cf. United States v. Blue*, 453 F.3d 948, 954 (7th Cir. 2006) (recognizing the district court's "obligation to weigh the defendant's cooperation . . . against the other statutory sentencing factors" where the government had made a § 5K1.1 motion). However, we disagree that the district court in this case failed to give sufficient consideration to Davis' substantial-assistance argument. The court simply rejected that argument in favor of the government's claim that "there were certain things that [Davis] would not admit that were essential to [his] cooperation." The court's decision to give more credit to the government's view of the extent of Davis' cooperation was not an abuse of discretion.

### C.  Sentencing Entrapment and Manipulation—Anthony

In addition to the *Kimbrough* argument that we have addressed above, Anthony adopts Davis' arguments that the district court failed to adequately consider evidence of sentencing entrapment and manipulation. As with Davis' analogous claims, we find that Anthony's

sentencing entrapment and manipulation claims are without merit. Along with Davis, Anthony negotiated the guns purchase with the ATF agent and readily agreed to the agent's suggestion that the defendants pay for the guns with crack instead of cash. The government did not have to resort to "extraordinary inducements" that would support a sentencing entrapment claim, *White*, 519 F.3d at 347, and its conduct was not so outrageous to support a sentencing manipulation claim, *Wagner*, 467 F.3d at 1090.

### III.  Conclusion

Because no congressional directive prohibited the district court from considering Davis' and Anthony's sentencing argument based on the crack/powder disparity affecting career offenders convicted of drug conspiracy offenses under 21 U.S.C. § 846, we VACATE these defendants' sentences and REMAND for resentencing consistent with this opinion. As for Armean's case, we order a LIMITED REMAND so that the district court may follow the procedure described in *United States v. Taylor*, 520 F.3d 746, 748-49 (7th Cir. 2008), to address the effect of both the 2007 Amendment to § 2D1.1 and *Kimbrough* on Armean's sentence. After resolving any motion for a reduced sentence under 18 U.S.C. § 3582(c)(2) based on the Amendment, the court should indicate whether it is inclined to reduce Armean's sentence under *Kimbrough*.