> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 6, 2020
Decided December 29, 2020

**Before**

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-3461

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:18CR00102-001 |
| BECKY L. PETERSON, *Defendant-Appellant*. | James D. Peterson, *Chief Judge*. |

**O R D E R**

Becky Peterson[1] and her boyfriend both pleaded guilty to conspiring to distribute over 50 grams of methamphetamine, see 21 U.S.C. §§ 841(b)(1)(B), 846, and each received a sentence of 66 months' imprisonment. Peterson challenges her sentence as procedurally unsound. She argues that the district court wrongly thought itself

---

[1] Careful readers will note that the defendant's surname is the same as the district judge's. They are not related.

obligated under 18 U.S.C. § 3553(a)(6) to impose the same sentence on her as it did on her co-defendant. By focusing on parity with his sentence, she argues, the court misunderstood § 3553(a)(6)'s command to avoid unwarranted sentencing disparities between similarly situated offenders nationally and overlooked important differences between their cases. If that is what the district court had done, then she would have a point. But reading the record as a whole, we are satisfied that the district court did not make such an error. Instead, it understood its discretion and adequately explained, on the basis of an individualized assessment of the factors under § 3553(a), why Peterson deserved the same term of imprisonment as her boyfriend. We therefore affirm.

**I**

Becky Peterson and her boyfriend, Mark Moore, lived together on Moore's farm in Wisconsin, where they used and sold methamphetamine. In late 2016, law enforcement became interested in their activities. Informants reported that meth was "always available" at the farm in the morning and that Peterson "ran the show." Moore obtained the meth from a source in Minnesota, they said, while Peterson set the prices, packaged the product, and gave it to Moore to sell.

Over the next two years, undercover officers watched the farm, where they often saw Peterson. There they bought meth—first just a few grams at a time, but later in amounts of 10 to 15 grams. They normally dealt with Moore. Moore once told the officers that Peterson would be angry that he had sold them larger amounts, which did not generate as much profit as smaller transactions. Peterson herself sold the officers 3.5 grams of meth and confirmed to an officer that she "set the prices."

In June 2018, officers stopped the sales. They arrested Moore at the farm and seized drugs, cash, and several guns. Separately, they arrested Peterson while she was camping. In post-arrest statements, Peterson confessed that she and Moore had been selling meth for two years: Moore traveled to Minnesota monthly to get it, and she packaged it for sale one ounce (about 28 grams) at a time. She estimated that she made $500 each month from her own sales but did not know their total profits because they each sold to different customers and she did not handle the cash. Moore corroborated that the two both used and sold the meth that he bought from their supplier.

After a grand jury indicted them on several drug-related charges, Peterson and Moore agreed to plead guilty to one count of conspiring to distribute over 50 grams of methamphetamine in violation of 21 U.S.C. § 841(b)(1)(B) and § 846. In December 2018, the First Step Act became law, Pub. L. 115, 132 Stat. 5194 (2018). It rendered Peterson potentially eligible for the safety-valve provision in 18 U.S.C. § 3553(f), which removes the effect of a mandatory minimum sentence. Peterson was permitted to withdraw and

re-enter her plea so that she could make an additional proffer to the government about her actions and seek safety-valve eligibility.

The presentence investigation reports came next. Probation services attributed between 150 and 500 grams of "Ice" methamphetamine to Peterson. Based on that quantity, see U.S.S.G. § 2D1.1(a)(5), (c)(4), it calculated a total offense level of 29. Combined with her criminal history category of II (representing two drug convictions and one conviction for possessing a firearm as a felon), this yielded a guidelines range of 97 to 121 months in prison. The PSR noted that Peterson's offense carried a statutory minimum of 60 months in prison, but observed that, based on her proffer about the details of the offense and her identification of the drug source, she was eligible for safety-valve consideration. Moore, by contrast, was not similarly eligible, because he did not identify his suppliers. Based on his offense level of 33 (higher because he sold more meth and handled the guns) and criminal history category of I, his guideline range was 135 to 168 months in prison.

The court proceeded to sentencing. Peterson accepted the PSR's guidelines calculations and factual account. The government conceded that Peterson met the safety-valve requirements but nonetheless asked for a within-guidelines sentence. Peterson countered that she should receive a sentence of probation for several reasons. First, she professed shame over her crime and said that she was committed to sobriety. In her sentencing memorandum, she also argued that, because Moore handled the guns, the money, and suppliers in the conspiracy, and never treated her as an equal, she was not as culpable as he was and deserved a shorter sentence. Finally, she urged that her age (63) and poor health (she has rheumatoid arthritis and was repeatedly hospitalized during pre-trial detention) adequately deterred her from future criminal conduct, and so a prison term would accomplish nothing beyond undue retribution.

The district court rejected Peterson's arguments and sentenced her and Moore to identical, below-guidelines terms of 66 months in prison. It acknowledged that Peterson had shown remorse and that, because she had cooperated with law enforcement, it was authorized to sentence her below the 60-month statutory minimum for her offense. But it also observed that she had conspired with Moore to sell large quantities of meth for a long time. Citing section 3553(a)(6)'s command to avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," the court also explained that, in its view, Peterson was not less culpable than Moore, despite his gun possession and greater sales of meth:

So of course Mr. Moore had the guns. The greater quantity was sold to undercover officers by Mr. Moore. … You have your boasts of controlling the operation. …

The bottom line is that I don't really see a great—I don't see a reason to make huge distinctions between the relative culpability. The two of you were in a long-term relationship. You lived at the same place. It seems apparent to me that you were both pretty much aware of what was going on and it really was a jointly-undertaken activity. So I think it would be wrong to really make a big deal about the fact that Mr. Moore, like a lot of guys that live in Wisconsin, had guns and he took guns in trade. … I think you both are kind of in this together and so, you know, "one for all, all for one" kind of situation.

Finally, the court was unconvinced that probation would be sufficient to deter Peterson from committing more crimes, given her personal history:

So I did say with Mr. Moore that I didn't think he was likely to reoffend. I don't quite have the same confidence with you because you've got the criminal record and 50 years of substance abuse. And so I'm cautiously optimistic that this would be your last criminal conviction, but I'm not super confident of it because you've been troubled before.

So the bottom line here is your age and your health issues are a consideration, but they're not really a free pass to commit serious crimes. So the takeaway here is that applying appropriate punishment, hoping it provides a specific deterrence to you to make you not commit crimes, to protect the public from what you have done and what you might do and to achieve parity with the treatment of Mr. Moore, I'm giving you the same sentence, which is 66 months.

## II

On appeal, Peterson contends that the district court procedurally erred in sentencing her to the same term as Moore. We review challenges to sentencing procedure de novo. *United States v. Gill*, 889 F.3d 373, 377 (7th Cir. 2018). Ordinarily an argument that the court imposed an overly long sentence without good reason is an attack on the sentence's substantive reasonableness. See, *e.g., United States v. Solomon*, 892 F.3d 273, 278–79 (7th Cir. 2018). But Peterson insists that the district court misinterpreted § 3553(a)(6)'s procedural command to avoid "unwarranted sentence disparities" by improperly focusing on achieving parity with Moore rather than with

similarly situated defendants nationwide. For support she relies on cases stating that § 3553(a)(6) is primarily concerned with sentencing disparities on a national scale, not between co-defendants. See, *e.g., United States v. Grigsby*, 692 F.3d 778, 792 (7th Cir. 2012); *United States v. Scott,* 631 F.3d 401, 405 (7th Cir. 2011); *United States v. Pisman*, 443 F.3d 912, 916 (7th Cir. 2006). And, she asserts, the court relied on non-existent similarities between her and Moore, overlooked significant differences between them, and failed to assess her personal circumstances individually as § 3553(a) requires.

Accepting Peterson's word that she is raising a procedural challenge, we conclude that the district court did not err in this respect. The procedures are familiar. A sentencing judge must: (1) correctly calculate the applicable guidelines range; (2) give meaningful consideration to the § 3553(a) factors and any nonroutine sentencing arguments raised by the defense; and (3) state the factors on which the sentence is based. See *Gall v. United States*, 552 U.S. 38, 49–50 (2007). A sentencing court makes a procedural mistake if it fails to heed § 3553(a)(6)'s command to avoid unwarranted sentencing disparities. *Gill,* 889 F.3d at 377–78. But if the court "correctly calculated and carefully reviewed the Guidelines range, then [it] necessarily gave significant weight and consideration to the need to avoid unwarranted disparities" and complied with § 3553(a)(6). *Gall,* 552 U.S. at 54; *United States v. Bartlett,* 567 F.3d 901, 908 (7th Cir. 2009).

The district court followed this framework. With respect to step one, the parties do not dispute that it correctly calculated and meaningfully considered Peterson's guidelines range. That was all that § 3553(a)(6) required. See *Grigsby,* 692 F.3d at 792. Next, as required by step two, the court evaluated Peterson's arguments about her personal characteristics (her age, health, and drug use), her criminal history (she had recidivated twice), and her role in the conspiracy (where she "boast[s]" of controlling the operation). Finally, for purposes of step three, the court identified the § 3553(a) factors on which it relied in sentencing Peterson to a 66-month term in prison, rather than probation or a lower number of months. This sentence was necessary, it explained, to achieve the goals of specific deterrence and protecting the community, given her recidivism and 50 years of drug abuse, as well as achieving parity with her "jointly" culpable codefendant.

Regarding this last point about parity, Peterson argues incorrectly that a district court may never consider the sentence of a comparable co-defendant in evaluating potential sentencing disparities. *Gall,* 552 U.S. at 55–56. We recently clarified that, despite language in cases such as *Scott* (cited by Peterson) implying that sentencing disparities matter chiefly across judges and districts, "[a] district court is entitled, if it wishes, to apply the rule against unwarranted disparities to co-defendants' sentences."

*Solomon*, 892 F.3d at 278. In short, although the court is not required to make a comparison between co-defendants, it is authorized to do so.

Here, in assessing Peterson and Moore, the district judge reasonably decided that they should receive comparable sentences. Peterson points to distinctions between herself and Moore that she believes are significant. She observes that, unlike her, Moore possessed multiple weapons, handled most of the sales (a point reflected in his higher guidelines range), and did not cooperate with law enforcement. But the district court adequately justified its conclusion that these distinctions did not require a lower sentence for Peterson. It explained that Moore's possession of guns and greater participation in sales were not more serious aggravators than Peterson's actions: she bragged that she set the prices and "ran the show." And although a defendant's cooperation with the government *may* warrant a lower sentence relative to a co-defendant, *United States v. Orlando*, 819 F.3d 1016, 1026 (7th Cir. 2016), a court can choose how much weight to accord cooperation. *United States v. Knox*, 573 F.3d 441, 453 (7th Cir. 2009). In Peterson's case, the court acknowledged that her cooperation qualified her for a sentence that, under the safety-valve provision, fell below the 60-month statutory minimum term in prison for her offense. But it permissibly decided against that much of a downward shift from the advisory range because it believed that she "jointly" undertook the meth operation with Moore, and unlike Moore, was more likely to re-offend given her lengthy drug history and past troubles with the law.

Because the district court did not procedurally err, we do not address the government's argument that, under 18 U.S.C. § 841(b)(1)(B), the quantity of drugs attributed to Peterson prohibited the district court from sentencing her to probation.

AFFIRMED